## PHILADELPHIA v. H. R. ANDERSON ET AL.

### APPEAL BY JOHN BAXTER FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued April 1, 1891—Decided May 18, 1891.
[To be reported.]

(*a*) Section 3, act of April 16, 1845, P. L. 489, provides that taxes imposed on real estate in Philadelphia shall cease to be a lien at a certain time after their assessment, unless registered ;* and by § 11, act of February 2, 1854, P. L. 29, it is the duty of the receiver of taxes " to furnish certificates of all taxes and claims which are a lien on real estate," for a specified fee :

1. Notwithstanding the receiver of taxes is an elective officer, over whose selection and term of office the city has no control, he acts as her representative in performing the duty of certifying thus imposed upon him by law, and the city is bound by his certificate given to a person who in good faith has acted in reliance thereon : Alcorn v. Philadelphia, 44 Pa. 348, distinguished.

---

* See Philadelphia v. Hiester, ante, 39.

Statement of Facts.

2. The receiver having given to a purchaser of land a certificate that on examination of the register of unpaid taxes for the years 1873 to 1877 inclusive, he found " nothing against said premises " except the taxes of 1877, the city was estopped from asserting a lien for the taxes of 1875, after the purchaser, in reliance upon the certificate, had paid the purchase money to his vendor.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 139 January Term 1891, Sup. Ct.; court below, No. 62 June Term 1880, M. L. D., C. P. No. 3.

On April 9, 1885, the city of Philadelphia brought scire facias against H. R. Anderson, owner, etc., and John Baxter, registered owner, upon a municipal claim for the taxes of the year 1875, filed against a certain lot of ground on Indiana street, Philadelphia, on June 10, 1880. Defendant Baxter pleaded non-assumpsit, payment, payment with leave and set-off.

At the trial, on January 16, 1890, the plaintiff having made out a prima facie case, the defendant put in evidence conveyances showing that on November 29, 1876, Helen R. Anderson, then the owner of the premises in question, joined with her husband, A. J. Anderson, in conveying the same with five other lots to Franklin C. Paxson, and that on May 31, 1878, Franklin C. Paxson conveyed the same lots of ground to defendant Baxter. Baxter then testified that, before taking title to said premises from Paxson, he obtained through Passmore Williamson, his conveyancer, a certificate of search from the receiver of taxes. The certificate was preceded by a written order, signed by Williamson and directed to the receiver. After describing the six lots aforesaid, the order directed the receiver to " Certify any taxes registered against the above in the name of Franklin C. Paxson, or that of any other person." Immediately below this order was written the certificate of search, dated May 15, 1878, as follows :

" On examining the register of unpaid taxes for the city of Philadelphia, for the years 1873 to 1877, inclusive, I find nothing against the above described premises, except as per bill of 1877.                                        CHAS. P. LYLE,

" Chief S'ch Cl'k."

The defendant offered the certificate in evidence. Offer objected to.

By the court: Objection sustained and the offer overruled, on the ground that it is irrelevant, and that if admitted the said certificate would establish no valid defence to the claim of the plaintiff; exception.[4]

The testimony being then closed, the court, FINLETTER, P. J., instructed the jury to find for the plaintiff, and a verdict for $41.23, in favor of the plaintiff, was returned accordingly.

A motion for a new trial having been argued, the court, FINLETTER, P. J., on June 16, 1890, delivered an opinion in part as follows:

The reasons for a new trial raise the question of the liability of the city for the acts of the tax receiver in giving certificates of search for registered taxes.

As taxation is a necessity of government, nothing but actual payment extinguishes a tax. No act of an agent in its collection can relieve the citizen from the duty of payment. The collector has no authority to do any act which could prevent the collection of unpaid taxes, unless he is clothed with authority by special legislation.

It is contended that, by the act of February 2, 1854, section 11, he is invested with all the powers necessary for the registering of all unpaid and delinquent taxes, and the collection of the same; and he is required to "furnish certificates of all taxes and claims which are a lien upon real estate, and receive therefor twenty-five cents for a certificate, and three cents for each lien and claim certified." He is further authorized "to file a claim against the premises for delinquent taxes, which claim shall be prima facie evidence of the amount thereof and of the same being due and owing." The ordinance of July 27, 1854, provides that he shall render to the controller daily accounts of his receipts and all fees, and daily pay the same into the city treasury. It is obvious that all these provisions are for the purpose of aiding the city in the collection of taxes.

It may be conceded that the city is bound by the acts of the receiver, in all matters relating to the collection of taxes and fees, when they are paid. But the city may at all times show that they have not been paid, even against his receipts. The city has provided no way by which a purchaser can be protected from tax receipts which have been improvidently given for taxes

Opinion of Court below.

which have not been paid. It has, however, provided three several ways by which an unpaid tax can be known. First, it gives receipt for all paid taxes; second, it provides a registry of unpaid taxes, which every one can examine; third, it permits its officer to act for the purchaser in the examination of the registry for any registered tax which is a lien.

The receiver is not authorized to certify that the taxes have been paid, or that he can find no unpaid registered taxes. The duties of his office may require him to certify unpaid registered taxes, but nothing else. When he certifies otherwise, he is acting without authority, and becomes the agent of the person who has ordered the certificate. Perhaps in everything which pertains to the certificate he should be regarded as the agent of him who ordered it, and not as the agent of the city. There would be no hardship in this ruling, as the purchaser can always demand from the grantor the receipts, and at all events can examine the registry of unpaid taxes. The city, not being a party, has no knowledge or notice of the transfer of the property.

The order in this case was, "Certify any taxes registered against," etc. The certificate is, "On examining the register of unpaid taxes for the city of Philadelphia, for the years 1873 to 1877, inclusive, I find nothing against the above described premises, except as per bill of 1877." Under this order, it was his duty to certify all unpaid taxes, but not his duty to certify that he "found nothing against the above described premises." When he can find no unpaid taxes, he is not required to give a certificate. If a purchaser desires to make use of this search and its results, the receiver, in complying, becomes his special agent for that purpose.

Independently of all questions of liability arising from his official position, the certificate was evidence only that he found nothing against the property, and was not evidence that there were no unpaid taxes against it. The certificate, therefore, was not admissible for any purpose. If the city is liable for an omission to certify an unpaid tax, that liability is not shown by a certificate like the one in question. It must arise either from a refusal to give a certificate, or from a certificate which avers that there are no unpaid taxes.

It cannot be contended that the certificate under consider-

ation can mean more than that the receiver has not been able to find unpaid registered taxes. There was nothing in the case to warrant us in instructing the jury that the certificate meant that there were no registered taxes unpaid, and therefore the defendant ought not to have concluded, and acted upon the conclusion, that the property was free from taxes. He had the means of examination for himself provided by the city, and it was his duty to use them. He did not avail himself of the opportunity, and he may not hold the city liable for his own neglect.

It is contended that the act of the receiver, in this case, is the act of the city, as indicated in Philadelphia v. Matchett, 116 Pa. 103. In that case, the city solicitor, by direction of councils, satisfied the claim of record. This was held in that case to be notice of payment, and the city was estopped from averring non-payment. The legislative power of the city had declared that the claim should be satisfied. The satisfaction was upon the judicial record, where the purchaser was bound to look. Satisfaction upon such a record is payment, in the absence of fraud or mistake. Moreover, the city in all matters pertaining to the water supply, is a private corporation, and subject to all the incidents of a private corporation. In the collection of taxes, it exercises a prerogative of sovereignty, and is subject only to its incidents.

In no event could the certificate have a higher significance than a receipt. In Kuhl v. Jersey City, 12 C. E. Green 84, it was held that a receipt for taxes on land given by a tax collector, on receiving a check, would not estop him from showing that the check was not paid, though a purchaser of the property was induced by such receipt to pay the whole consideration: " The collector did not give the receipt knowing that it would be used for such a purpose, nor did the mere giving of the receipt raise a presumption that it would be used to defraud a purchaser."

The principles established in Alcorn v. Philadelphia, 44 Pa. 348, appear to rule this case. It was there held that, because the surveyor was elected directly by the people under the authority of a statute, the corporation had no control over him, and was not bound by any of his acts; and that it is not a duty incumbent upon cities to provide for the surveying of lots, but

a private one falling upon the lotholders; and if injury results from negligence the employer must look to him for redress. . .

In Boyd v. Insurance Patrol, 113 Pa. 269, CLARK, J., said: "It has been repeatedly decided, that, as a general rule, a municipality, in the performance of certain public functions, delegated to it by the sovereignty of the state, is an agent of the government, and is not liable for the malfeasance or negligence of its officers or employees." . . . .

The receiver of taxes and the surveyor of the district are alike elected by the people. They hold their offices for the convenience of the public, and render services to the individual for his benefit alone and at his request, for which fees are paid as a reward. The city cannot control their election, or their continuance in office. Nor can it direct, control, correct, or annul their official acts, otherwise than is provided by statute. When they are requested by an individual to perform a service for his protection, they become his agent, and cease to be the agent of the public or the municipality.

It was contended, that as the city received the fee for the certificate, it thereby became responsible. No satisfactory reason has been presented to sustain this conclusion. It cannot be pretended that the fee is a premium for insurance. How can it then impose a liability where none before existed? How does it change the relations which before existed between the city and the receiver and the defendant, and between the defendant and the receiver? . . . . Fees are but the compensation which the city receives for the expenses it incurs for the benefit of individuals, and impose no liability for the unauthorized acts of public officers. By an act of assembly, the officers themselves are liable for any injurious official act. . . . .

There can be no basis for the contention of the defendant, unless the certificate works an equitable estoppel. The general rule is that where one, by his words or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his previous position, the former is concluded from averring against the latter a different state of things as existing at the same time. What fact does the certificate assert? "I find nothing against the premises except," etc. It was not this fact upon which the defendant acted, but upon the inference that be-

cause the receiver could not find any register of unpaid taxes, there were no unpaid taxes. There is no evidence that this statement was untrue. That he believed it, may be inferred from the fact that it was his interest and duty to certify unpaid taxes. There is, therefore, wanting two elements of estoppel in the certificate ; the false statement, and acting upon it by the defendant.

But the city neither made nor authorized any statement to be made. It cannot be held liable for the utterances of its agents, even in reference to matters within their proper sphere of duty as its agents. It is responsible only for their official acts. If the certificate be held to be a declaration that there were no unpaid taxes against the property, and that the city is responsible for it, it is because it is the act of the city by its properly authorized agent. It is not responsible because it is a declaration by the city. The doctrine of estoppel, therefore, has no application. But if the receiver was not the agent of the city in this matter, then no liability arises, either for his act or for his declaration, and the city is not estopped by the certificate.

In addition to all this, there was nothing but the carelessness of the defendant in not using the ordinary means which a purchaser has to protect himself and the city. He could have required the receipts, and their absence would have been conclusive that the taxes had not been paid. He could have ordered another search, or he could have made personal examination of the register. He had no right to assume that there was no probability or possibility of mistake on the part of the receiver. It is not equitable to make the city bear a loss arising from his own carelessness.

The collection of taxes with certainty is essential to good government. That all taxes must be paid, is just as important as that all taxation should be uniform and rest upon all alike. Equitable estoppel, when pushed too far, would relieve the delinquent taxpayer, and impose his burden upon the prompt, honest taxpayer. This would be doing what the constitution forbids, establishing unequal taxation.

—The rule for a new trial having been discharged and judgment entered, the defendant Baxter took this appeal, specifying that the court erred :

1. In rejecting the certificate of the receiver, as evidence of payment of the tax for 1875.

2. In rejecting the certificate, as evidence that the tax had not been duly registered.

3. In rejecting the certificate, as evidence which should estop the city from maintaining this action.

4. In refusing the defendants' offer.[4]

*Mr. Thomas B. Taylor*, for the appellant:

Counsel cited: § 11, act of February 2, 1854, P. L. 29; § 2, act of March 11, 1846, P. L. 114; Ordinance, Philadelphia, July 27, 1854, Brightly's City Dig., 349, § 18; Smaltz v. Donohugh, 11 W. N. 220; Dillon on Mun. Corp., § 237, n 1; Philadelphia v. Matchett, 116 Pa. 103; Lawrence v. Philadelphia, 14 W. N. 421; Philadelphia v. Glanding, 26 W. N. 319; Lancaster v. Smith, 67 Pa. 427; Brown v. Henry, 106 Pa. 262; Hill v. Epley, 31 Pa. 334; Gray's App., 10 W. N. 458; Waters's App., 35 Pa. 525; Brooke v. Railroad Co., 108 Pa. 529; Freeman v. Cook, 3 Exch. 654; Cumen v. New York City, 79 N. Y. 513; Union Depot Co. v. St. Louis, 76 Mo. 394; New Haven etc. R. Co. v. Chatham, 42 Conn. 456; Society for Savings v. New London, 29 Conn. 192; Chicago etc. Ry. Co. v. Elgin, 91 Ill. 251; Martel v. East St. Louis, 94 Ill. 67; Note to Den v. Oliver, 2 Sm. L. C. 643, 646: distinguishing Kuhl v. Jersey City, 8 C. E. Green 84.

*Mr. Abraham M. Beitler* (with him *Mr. Isaac H. Shields* and *Mr. Charles F. Warwick*, City Solicitor), for the appellee.

A reading of the facts in the cases cited by the appellant will show that they are not applicable here. The able and exhaustive opinion of the court below renders further argument unnecessary.

OPINION, MR. JUSTICE WILLIAMS:

In the recent case of Crouse v. Murphy, 140 Pa. 335, in which an opinion was filed at the present term, we had occasion to note the evident purpose pervading the legislation of this state to protect bona-fide purchasers of real estate against unrecorded liens and encumbrances. The same general subject is brought to our attention from a different stand-point by

the facts now before us.   These are that Baxter purchased in
1878 a house and lot on the south side of Indiana street, in the
Twenty-eighth ward of the city of Philadelphia, from one F.
C. Paxson.   His conveyancer, in order to secure for his em-
ployer an unencumbered title to the premises he desired to buy,
applied to the receiver of taxes, and requested him to " Certify
any taxes registered against the above property in the name of
Franklin C. Paxson, or that of any other person."   On the
fifteenth of May, 1878, he received from the receiver's office a
certificate properly executed setting forth that " On examining
the register of unpaid taxes for the city of Philadelphia for the
years 1873 to 1877, inclusive, I find nothing against the above-
described premises except as per bill of 1877."   The convey-
ancer, upon the receipt of this certificate of no lien except for
taxes of 1877, concluded the transaction, and the purchase
money was paid over.   Three years afterward, the city, in 1880,
filed a claim against the same premises for the taxes of 1875.
A writ of scire facias was issued on the claim in 1885, which
was eight years after the certificate was made, and ten years
after the taxes are alleged to have accrued.   The defendant
replied to the writ with the certificate of the receiver that the
city had no lien on the premises for the taxes of 1875, and with
the fact that, relying on the certificate, he had paid over the
purchase money.   His position was that, if the certificate was
true, the city had no lien, even if the taxes were unpaid.   If
it was untrue, he having been misled by it into paying out
the money when it was in his hands, the city was estopped
from alleging its untruth against him.   The court below, enter-
taining a different opinion upon the effect of the certificate,
directed a verdict in favor of the city.   The defendant appealed,
and assigns the ruling of the learned judge in the court below
as error.   The effect of the certificate is therefore the only
question before us.

It is well to remember at the outset that taxes upon seated
property were originally a personal charge against the owner,
for which his personal property and his person were liable to
seizure, but which were not a lien upon land: Burd v. Ramsay,
9 S. & R. 109.   In regard to unseated land a different rule
prevailed; the land being treated as the debtor, and not the
owner.   Payment was compelled by the sale of the land with-

out any personal demand on the owner. In order to facilitate their collection, the legislature has from time to time made seated taxes a lien on the lands on which they are assessed, by a series of acts of assembly applicable to different portions of the state. In Philadelphia, they were made a lien, under certain limitations, as early as 1824, by an act passed on the third of February in that year.* It provided that taxes imposed on real estate in Philadelphia " shall be . . . . . a lien on the said real estate on which they may hereafter be imposed or assessed," and that such lien should have priority over liens for debts due to individuals by recognizance, mortgage, or judgment against the same real estate. The duration of this lien was limited by the act of 1845 to the first day of July in the year following that for which the tax is imposed, unless before that time the tax was registered in a book to be kept by the register of unpaid taxes, for that purpose. If it was registered in time, then the lien was continued to the end of five years from the time the lien began. If, before the expiration of the five years, a claim was filed for the tax in the office of the prothonotary, this continued the lien for five years from the entry of the claim. The tax was thus made a lien during the year for which it was levied and until the first day of July following, without any formal registry. The lien thereafter was lost unless the tax was entered on the register of unpaid taxes, and at the end of five years it ceased altogether unless proceeded for by claim filed in the Court of Common Pleas. A purchaser was therefore bound to take notice of the current taxes for six months after the end of the year. He was then bound to take notice of the registry for the balance of five years. After five years, he was not bound to inquire beyond the lien dockets. To enable him to know with certainty what the registry showed, the act of 1854† made it the duty of the receiver " to furnish certificates of all taxes and claims which are a lien on real estate," and provided a fee to be charged for such service. The certificate held by Baxter was made under the direction of the act of 1854.† Does it protect the purchaser who procures and acts upon it? The court below held that it did not, and gave three reasons for entertaining that opinion :

---

* P. L. 18; 8 Sm. L. 189.
† Section 11, act of February 2, 1854, P. L. 30.

1. The receiver is an elective officer, over whose selection and term of office the city has no control, and for whose certificates she is therefore not responsible.

2. The law does not make it his duty to certify to the absence of liens, and when he gives such a certificate he "becomes the special agent of the purchaser" who asks for it.

3. The certificate, by reason of its form, or want of it, imposes no liability, even if it was the duty of the receiver to make certificates of search and no lien.

As authority for the first of these positions, Alcorn v. Philadelphia, 44 Pa. 348, is cited. The plaintiff in that case sought to hold the city for the negligence of the city surveyor in locating the lines of plaintiff's lot at his request. This court held that the act of the city surveyor was in no sense that of the city, nor was the duty in which he was engaged a municipal duty. The location of lines between adjoining owners, and surveying lots, was held to be "not a duty incumbent on cities in their corporate capacity, . . . . but a private one falling on the lotowners themselves." The city surveyor, like county surveyors and other public officers, is elected not to represent the municipality, but to serve the public as occasion may require, at the instance and upon the employment of individuals. But the collection of taxes is a municipal purpose. They are levied, collected, and disbursed under the authority and direction of the city, by officers appointed or elected for the purpose, who represent the city. When levied, the duplicates are charged to the receiver. He is the only authorized collector and receiving officer. He is required to open his books for the receipt of taxes on the first day of January of the year for which the taxes are assessed. His daily collections must be reported to the city controller, and his daily cash receipts deposited in the banks designated for that purpose. Taxes not paid during the year or within fifteen days thereafter he is required to enter upon the register of unpaid taxes, in order to continue their lien. If this is not done, the lien ceases, and the real estate may pass, by sale, discharged therefrom: Smaltz v. Donohugh, 11 W. N. 220. The entries on the register, if made in time, are valid liens on the real estate affected by them, and must be taken notice of and provided for in case of sale. These liens are not the result of legal proceedings in a court of record,

which are notice to everybody, but of the act of the city in carrying the unpaid taxes upon the book kept for that purpose in the office of her receiving officer. This is the book of the city, made up by the officials who represent her, and remaining in their custody. It is the evidence of her demands upon real estate within her borders. A purchaser must take notice of this book, and to enable him to know with certainty what appears upon it, the law makes it the duty of the receiver of taxes to certify the liens against any particular piece of real estate. This is a specific duty imposed upon him by law, as the representative of the city, the collector of its taxes, and the custodian of its records. In its discharge he represents his principal; speaks for it, and binds it. If his certificate is false and misleading, one who acts upon it in good faith has a right to insist that the city is bound by it. The city is not above the duty to deal fairly and justly with its citizens, and to speak the truth to them when the duty to speak for their information rests clearly on it.

The second reason does not seem to us tenable. When taxes were made a lien on the real estate on which they were levied in the city of Philadelphia, it was necessary to provide some record of the liens unpaid at the end of the current year. For this purpose a book was provided, upon which unpaid taxes were to be entered. Taxes not appearing there were presumed to be paid, and they were not liens. Taxes appearing there were valid liens upon the real estate on which they were assessed. This book was thus made the lien docket of the city. It was the proper and the only reliable source of information open to the interested inquirer. It was kept by and in the custody of the receiver, whose duty it was to certify liens appearing upon it. When applied to, it was his duty, as the representative of the city, to state truly the liens against the real estate inquired about. Baxter's conveyancer applied for a search, which made an examination for five years necessary. The receiver certified that he had examined for five years, viz., 1873 to 1877, inclusive, and that there were no taxes registered against the lot except those of 1877. It was as important to the purchaser to know that there were no taxes registered for 1875 as to know that there were taxes unpaid for 1877. It was the amount of liens the purchaser was inter-

ested to know and that the city was bound to tell him, for they were to be taken into consideration and adjusted in the purchase about to be closed. In giving this information, he was in no sense the agent of the purchaser. He was discharging an official duty, viz., certifying the liens against the lot inquired about, and he was under a legal obligation to certify their amount truly.

Nor do we regard the form of the certificate as a matter of any consequence in this case. The purchaser applied for and had a right to receive a certificate in proper form, informing him of the exact amount of the demands of the city for unpaid taxes. A certificate intended to convey the needed information was furnished, and relying on the truth of its statement, the title was taken and the purchase money paid over. Having thus led the purchaser to pay the amount of the taxes of 1875 to his vendor as purchase money, the city cannot now be permitted to set up the mistake of its officer as a reason for compelling the payment of the money a second time. If it was a mistake, as it was acted upon in good faith by the purchaser, the city cannot now assert a lien for the taxes of 1875, nor deny the facts which the certificate asserted.

The subject of the want of form in a certificate and of negative statements therein was considered in Ziegler v. Commonwealth, 12 Pa. 227, in which a certificate similar to the one before us was held sufficient in form to justify a recovery.

The judgment in this case is reversed, and a venire facias de novo awarded.