PEOPLE ex rel. SWEET, Supervisor, v. BOARD OF SUP'RS OF ST. LAWRENCE COUNTY.

(Supreme Court, Appellate Division, Third Department. January 4, 1905.)

1. TAXATION—ASSESSMENT—DUTIES OF TOWN AND COUNTY BOARDS.
    The county board of supervisors, as such, has nothing to do with the assessments of the various towns, except to equalize them for the purpose of levying the tax; and the town assessors are not bound to accept the board's advice or recommendation as to the amount at which they should assess property, nor are they authorized to follow an improper recommendation of the board, and hold the county responsible for the consequences of so doing.

2. COUNTIES—CONTRACTS OF SUPERVISORS—VALIDITY.
    An agreement on the part of the county board of supervisors that the county would pay such expenditures as a town might incur in attempting to sustain an assessment made by the town assessors on the recommendation of the county board is ultra vires, and does not bind the county.

3. SAME—ESTOPPEL—ULTRA VIRES ACTS.
    A county is a municipal corporation, and cannot be estopped by the unauthorized or illegal agreements or acts of its agents and officers.

4. SAME.
    Where a county board of supervisors, after having passed a resolution promising that the county would bear the expense of certain litigation conducted by the various towns, passed another resolution that such expenses were not a county charge, and that the agreement to pay them was ultra vires, the county was not estopped to assert the invalidity of the first resolution as to expenses incurred after the passage of the second resolution.

Certiorari by the people, on the relation of Herbert E. Sweet, supervisor of the town of Madrid, to review the proceedings of the board of supervisors of St. Lawrence county in rejecting a claim of the relator. Writ quashed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

F. J. Merriman and V. P. Abbott, for relator.
Thomas Spratt, for defendant.

HOUGHTON, J. Prior to the year 1898 the several towns in the county of St. Lawrence had assessed the various railroads running through the county at unequal amounts per mile. The agitation upon the subject resulted in a recommendation by the board of supervisors that all towns assess all railroads $10,000 per mile, and as an evident inducement for towns so to do the board passed a resolution that, in

case any town should become involved in litigation with the railroad company by reason of assessment at that rate, the remaining real estate being assessed properly at full value, the county should bear the expense of such litigation. This relator, the town of Madrid, had, prior to the adoption of the resolution, assessed the Ogdensburg & Lake Champlain Railway $8,000 per mile. In the succeeding year it assesssed it at $10,000 per mile, in accordance with the recommendation of the board, and in evident reliance upon said resolution. Proceedings were instituted by the railway company under the tax law for a reduction of this assessment, which resulted in a reduction to $8,000 per mile, the remaining real estate of the town being found to have been assessed at full value. In defending this proceeding the town expended $324.63, and at the annual session of the board in 1899 presented the same for audit, and it was treated by the board as prematurely presented because the litigation had not yet terminated. From the determination of the court reducing the assessment of the railroad company the town of Madrid took an appeal, upon which it was unsuccessful, and in which, including costs taxed against it, it expended the sum of $1,856.38. A claim for this amount was presented to the board of supervisors, and rejected upon the ground that it was not a county charge, and that the board of supervisors had no power to agree to pay a claim of such character, or pay it after it had been incurred. It is to review such action that this writ of certiorari is issued.

We think the writ must be quashed. It was the town board of assessors against which the railway company instituted proceedings because of the wrongful assessment. The board of supervisors, as such, had nothing to do with the assessments of the various towns, except to equalize them for the purpose of levying the tax. The assessors were not bound to accept its advice or recommendation as to the amount at which they should assess. Certainly they were not authorized, as the event proved, in following an improper recommendation. The agreement on the part of the board that the county would pay such expenditures as the town might make in attempting to justify the judgment of the board as to how railroads should be assessed was beyond the power of the board to make. It was not a matter in which the county, as such, was interested, nor was the county at large benefited by it. Whatever moneys it was necessary for the county to raise by taxation would be raised whether the railroads in one town were assessed $8,000 or $10,000 per mile. It was not, therefore, within the power of the board to bind the county in the manner attempted. If a private corporation, through its officers or an individual, had done what the board of supervisors did in 1898, and the town had acted on the faith of such recommendations and promises, and incurred expense, the principles of estoppel might apply to at least a part of the bill finally presented. The county, however, is a municipal corporation, and municipal corporations cannot be estopped by the unauthorized or illegal agreements or acts of their agents. Dillon on Mun. Corp. (4th Ed.) §§ 457, 936; Moore v. The Mayor, 73 N. Y. 238, 246, 29 Am. Rep. 134. But as to a very large proportion of the expenditures made after the presentation of the first bill in 1899 no estoppel could be invoked, even if the principles of estoppel were applicable to

the county, for the board withdrew from its former position, and by resolution gave distinct notice that such claims were not a county charge, and that the agreement to pay them was beyond the scope of the powers of the board.

The writ of certiorari should be quashed, but, under the circumstances, we think no costs should be imposed. All concur.