AMERADA PETROLEUM CORPORATION v. 1010.61 ACRES OF LAND, MORE OR LESS, SITUATE IN HARRIS COUNTY, TEX., et al.

No. 10977.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1944.

Harry D. Page, of Tulsa, Okl., and H. L. Nicholson, of Houston, Tex., for appellant.

Robert R. Casey and Brian S. Odem, U. S. Atty., both of Houston, Tex., for appellees.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Into a proceeding brought to condemn land in Harris County, Texas, owned by Amerada Petroleum Corporation, came the State of Texas and Harris County, asserting a tax lien for the years 1922, 1923 and 1926, and claiming $550 of the award. Amerada pleaded and proved that in 1935, at which time Harris County had a population of more than 210,000, it had purchased the land in reliance upon a tax certificate[1] showing "no taxes unpaid", issued by the tax collector under article 7258a of the Texas Statutes,[2] and that if it had known that there were unpaid taxes, it would have required the vendor to pay them.

Appellees, admitting these facts to be true, made no point against the certificate as such, but they insisted below that the statute under which the certificate was issued, and the certificate itself, were invalid as violative of Sections 10[3] and 15[4] of Article 8 of the Texas Constitution, Vernon's Ann.

---

[1] "Office of J. W. Hall,
"Assessor & Collector of Taxes,
Harris County.
"No. 65371.
· "Houston, Texas, 8/8, 1935.
"Tax Certificate.
"Tax Rolls of Harris County show no taxes unpaid against Lot —— Block —— Out Lot —— Abst. No. 28, Survey Harris & Carpenter 9150 acres, Vol. 40, Page 240/AA, Addition —— City or Town —— up to and including the year 1934 Assessed in the name of Federal Trust Co./14230 for the year 1934.
"J. W. Hall,
"State and County Assessor & collector of Taxes,
"By (Sgd.) W. D. Thornal, Deputy.
"E.&O.E. (For 1929 to 1934, inc.)
"Fee None (Paid on 95.50 acres)."

[2] "Tax receipt as evidence of payment.
"Sec. 1. On and after October 1st, 1929, the Tax Collector or his deputy of any county in this State containing 210,000 population or more according to the last preceding federal census, or any city or political subdivision or tax assessing district within any such county shall, upon request, issue a certificate showing the amount of taxes, interest, penalty and costs due, if any, on the property described in said certificate. When any certificate so issued shows all taxes, interest, penalty and costs on the property therein described to be paid in full to and including the year therein stated, the said certificate shall be conclusive evidence of the full payment of all taxes, interest, penalty and costs due on the property described in said certificate for all years to and including the year stated therein. Said certificate showing all taxes paid shall be admissible in evidence on the trial of any case involving taxes for any year or years covered by such certificate, and the introduction of the same shall be conclusive proof of the payment in full of all taxes, interest, penalty and costs covered by the same.

"Sec. 2. If any such certificate is issued or secured through fraud or collusion, the same shall be void and of no force and effect, and any such Tax Collector or his deputy shall be liable upon his official bond for any loss resulting to any such County or city or political subdivision or tax assessing district or the State of Texas, through the fraudulent or collusive or negligent issuance of any such certificate." Vernon's Ann.Civ.St. art. 7258a.

[3] "The Legislature shall have no power to release the inhabitants of, or property in, any county, city or town from the payment of taxes levied for State or county purposes, unless in case of great public calamity in any such county, city or town, when such release may be made by a vote of two-thirds of each House of the Legislature."

[4] "The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes and penalties due by such delinquent, under such regulations as the Legislature may provide."

St., they insist here that it violates Sec. 55 of Art. 3,[5] and Sec. 1 of Art. 2.[6]

The District Judge, of the opinion that the appearance on the certificate of the letters, "E. and O. E.", "presumedly meaning errors and omissions excepted", rendered it ineffective as not in compliance with the statute, a point not raised by appellees below and not relied on by them here, charged the taxes on the fund.

Here, as below, appellees make no claim that the certificate was in anywise deficient, and in effect concede that if the statute is without constitutional infirmity, the certificate is valid and effective. Since we think it quite clear that this is so, we turn, without further discussion of the ground on which the case went off below, to consider whether the statute and the certificate are invalid on constitutional grounds. We do not think they are. These sections have been many times under review in the courts of Texas.[7] In none of the decided cases have the reasons for their enactment, their purpose and effect been more clearly set down than in Jones v. Williams and in Mexia v. City of Mexia. In Jones v. Williams, the court holding that they did not prevent the Legislature from remitting penalties on delinquent taxes, including interest, said [121 Tex. 94, 45 S.W.2d 132]: "Under all Constitutions previous to 1876, the Legislature had plenary power to exempt property and persons from taxation, and very generally exercised it. * * * From 1852 to 1858 all state taxes, except the school tax were relinquished to the counties. * * * According to Raines' Index to Gammel's Laws, from 1836 to 1876, 1190 laws were enacted granting relief, many of which related to taxes. The provisions of sections 51 and 55 of article 3, and section 10 of article 8, as well as others, were no doubt placed in the Constitution of 1876 in an effort to prevent the abuses and financial deficiencies which had characterized the administration of the government from the days of the Republic."

In Mexia v. City of Mexia, the court rejected the claim that a statute providing procedure for collecting delinquent taxes was unconstitutional because it would be possible for representatives of a taxing unit, by failing to appear and file claim, to thereby waive and release to the property owners the lien for taxes. It said [134 Tex. 95, 133 S.W.2d 122]: "We recognize that it is possible, under the Act in question, for such representatives, by their carelessness or otherwise, to fail to properly foreclose the liens held by the taxing units which they represent, but this is a danger inherent in all governmental functions performed by human agents. It has always been possible for commissioners' courts by failing to assess property at its full value, or for attorneys by failing to properly prove up their cases in tax units, or for jurors by improperly resolving questions of fact in favor of the tax debtor, to thereby deprive a taxing unit of its just dues, but the mere existence of this possibility does not render all our tax laws unconstitutional. It is presumed that all public officials will honestly perform their official duties, Anderson v. Polk, 117 Tex. 73, 297 S.W. 219, and the statute and constitutional provisions in question must be construed in the light of that presumption. When so construed, the statute is not unconstitutional on the grounds stated. This exact contention was made in the case of Willacy County Water

---

[5] "The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual, to this State, or to any county or other municipal corporation therein."

It was amended in 1932, by adding after "county" the words: "or defined subdivision thereof, or other municipal corporation therein, except delinquent taxes which have been due for a period of at least ten years."

[6] "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

[7] State v. Pioneer Oil & Refining Co., Tex.Com.App., 292 S.W. 869; Lindsey v. State, 96 Tex. 586, 74 S.W. 750; Delta County v. Blackburn, 100 Tex. 51, 93 S.W. 419; Ollivier v. City of Houston, 93 Tex. 201, 205, 54 S.W. 943; City of San Antonio v. Johnson, Tex.Civ.App., 186 S.W. 866; Jones v. Williams, 121 Tex. 94, 45 S.W.2d 130, 79 A.L.R. 983; Mexia Independent School Dist. v. City of Mexia, 134 Tex. 95, 133 S.W.2d 118.

Control & Improvement Dist. No. 1 v. Lewis, Tex.Civ.App., 119 S.W.2d 159, and the San Antonio Court in that case, in an opinion by Associate Justice Slatton, overruled the contention. If the statute is followed and the officers perform their duty as they are presumed to do, it will be impossible to confer any special benefit on the tax debtor."

 The statute under construction here does not purport to surrender or release to anybody any tax that is really due. It is not intended to be, it is not, a statute of limitation. It is intended, in the interest of the public, to make real and dependable the sometimes illusory presumption that officers will do, and have done, their duty, and to provide security against secret tax liens analogous to that security which is provided against other secret liens under the registration laws of the state. It operates not as a gift or grant but as a wise provision in the interest of the State and its people for protection against secret and undisclosed liens. It is equitable in its content. In its effect it is consistent with general public policy. It is not intended to violate, it does not operate as a violation of, the invoked provisions of the Constitution against releasing debts or obligations.

 Appellant's attack upon the statute as conferring on the Legislature authority to determine facts, a power vested in the courts, and therefore in violation of Sec. 1, Art. 2 of the Constitution, the separation of powers article, is wholly unfounded. It has never been doubted that Legislatures can establish presumptions either of fact and rebuttable, or of law and irrebuttable. 20 Am.Jur. §§ 160 and 161. In some instances, when the law creates a conclusive or irrebuttable presumption upon the occurrence of certain facts, this is in effect a substantive rule of law to be applied by the court in its evaluation of the issues the same as any other fixed rule of law. The rule with respect to irrebuttable or conclusive presumptions of law

rests upon grounds of expediency or public policy so compelling in character as to override the fundamental requirement that questions of fact must be resolved in accordance with, and must be covered by, the proof. Id., United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L. Ed. 793. There is authority for the view that a statute creating a conclusive presumption does not thereby create a rule of substantive law, but the presumption merely continues to be a substitute for proof. 20 Am.Jur., p. 165. It is true, of course, that the 14th Amendment stands in the way of legislative,[8] and the 5th of congressional,[9] establishment of irrebuttable presumptions depriving individuals of their rights. But this principle is without application here where the state is dealing with its own property and, instead of depriving the citizen of rights, is protecting him in rights acquired on the faith of the presumption that public officers have done their duty. In short, the statute is but a legislative assurance that when officers have searched the records where alone evidence of tax liens is to be found and have been satisfied that there are no taxes due, the citizen who acts on their certificate that this is so may safely rely upon the presumption as conclusive, and the state will be bound by his reliance.

Appellant cites cases from many jurisdictions which have held that tax certificates issued by collectors even in the absence of a statute of this kind, operate as a kind of estoppel against the taxing unit to protect purchasers on the faith of them.[10] We need not determine whether these cases go further than the general rule which protects a state against estoppel from the unauthorized acts or representations of its officers, 19 Am.Jur. § 166, for here the acts relied upon to estop the state are acts done under the authority of the Legislature acting under a constitution which contains no prohibition against authorizations of the kind in question. Id. In Oklahoma, where the Constitution contains the same prohi-

[8] Manley v. Georgia, 279 U.S. 1, 49 S. Ct. 215, 73 L.Ed. 575; Hoeper v. Tax Comm., 284 U.S. 206, 52 S.Ct. 120, 76 L. Ed. 248, 78 A.L.R. 346; Schlesinger v. Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557, 43 A.L.R. 1224.

[9] Heiner v. Donnan, 285 U.S. 312, 52 S. Ct. 358, 76 L.Ed. 772.

[10] In Pa.: City of Philadelphia v. Anderson, 1891, 142 Pa. 357, 21 A. 976, 12 L.R.A. 751; Erie City v. Piece of Land et

al., 1932, 308 Pa. 454, 162 A. 445; in Iowa: Jiska v. Ringgold County, 1882, 57 Iowa 630, 11 N.W. 618; Cummings v. Easton, 1877, 46 Iowa 183; in New York: Rankin v. City of New York, 1911, 145 App.Div. 838, 130 N.Y.S. 427, affirmed 1912, 204 N.Y. 684, 98 N.E. 1114; Curnen v. Mayor, etc., of City of New York, 1880, 79 N.Y. 511; and City of New York v. Halsey, 1909, 132 App.Div. 192, 116 N.Y.S. 947.

bitions against the Legislature's releasing or extinguishing indebtedness as are contained in the Texas Constitution, its Supreme Court, in Love v. Silverthorn, 187 Okl. 114, 101 P.2d 254, 129 A.L.R. 676, has held valid a statute providing that after the expiration of a certain time no omitted intangible property may be assessed for taxes for 1939 and prior years.

When the purpose of the statute in question here, to protect innocent purchasers against secret liens, is considered in the light of its strong terms, completely avoiding all collusive or fraudulent certificates and making the collectors liable on their bonds for losses resulting from their collusive, fraudulent, or negligent issuance, it is quite plain that the Legislature did not intend to release or extinguish, the act does not have the effect of releasing, taxes. It represents merely an exercise by the Legislature of its broad powers of protecting persons against secret and undisclosed tax claims. Appellant bought the land on the faith of the certificate. It is entitled to abide in that faith and to hold the property and its proceeds free of the then denied, the now claimed, lien.

The judgment is reversed, and the cause is remanded with directions to enter judgment denying the tax claim.