Stuart T. ALLEN and Jocelyn G. Allen, his wife, Petitioners,

v.

Henry R. FOLSOM, Jr., et al., Respondents.

Court of Chancery of Delaware, New Castle.

Submitted June 16, 1976.

Decided June 28, 1976.

John T. Gallagher, James F. Waehler and Vincent J. Poppiti of Morris, Nichols, Arsht & Tunnell, Wilmington, for petitioners.

Catherine S. Mulholland, New Castle County Dept. of Law, Wilmington, for respondents.

QUILLEN, Chancellor:

Plaintiffs Stuart T. and Jocelyn G. Allen are resident taxpayers of New Castle County. Defendants Henry R. Folsom, Jr., Francis J. Schneider, Andrew J. Casey, Lois M. Parke, Francis J. Swift, William P. Cooke and Joseph F. Toner constitute the New Castle County Council; defendant Dennis Kerns is Director of Finance of New Castle County.

The essential facts are undisputed. On or about July 1, 1972, New Castle County real estate taxes in the amount of $858.18 became due on the property at 913 Cecil Road, Westover Hills, New Castle County. At that time, the County tax assessment records identified the owner of the property as Patricia K. McCormick. On November 27, 1972, the Allens entered into a contract with Patricia K. McCormick and Willis J. McCormick, her husband, for purchase of the property. Prior to settlement on January 23, 1973, a title search on the property was conducted by Morris, Nichols, Arsht & Tunnell, attorneys for plaintiffs (Hereinafter "MNAT"). Daniel F. Tuckerman, an employee of MNAT, checked with the County Finance Department to learn if there were any delinquent or unpaid New Castle County Taxes constituting liens against the property. Due to the filing system then in use, the County's records apparently reflected, and Tuckerman was advised, that there were no delinquent taxes and that the current 1972–73 taxes of $858.18 were paid in full.

On or about May 8, 1973, MNAT was advised by the Allens' mortgagee that the County had notified it of a tax delinquency on the property for 1972–1973, in the amount of $354.71. Thereupon, James F. Waehler, a MNAT attorney, went to the Finance Department to verify this report. The County records still reflected that there were no delinquent taxes against the property and Waehler was so advised. But a thorough check of the records revealed the delinquency which had been brought to the mortgagee's attention. Waehler was then told that on December 20, 1972, partial payment had been made by the McCormicks, and that this information had been misfiled as if "full payment had been made." After this was revealed, MNAT was told by the Allens that the County had imposed an excess sewer use charge against the property in the amount of $76.60, despite the fact that the sewer search filed by and returned to MNAT prior to settlement reflected that there were no current or delinquent sewer charges owed on the property.

In mid-June of 1973, John T. Gallagher, an attorney of MNAT, brought these facts to the attention of Thomas L. Luce, New Castle Attorney. In September of 1973, Joseph M. Bernstein, Assistant County Attorney, told James F. Waehler that the County would contact the McCormicks and attempt to collect the taxes. On September 11, 1973, Waehler confirmed by letter to Bernstein the former's understanding of the latter's intentions. On September 12, Bernstein wrote the McCormicks that they were still liable for the taxes they had not paid, despite their having sold the property. In January, 1974, Waehler confirmed by letter the contents of another discussion with Bernstein, during which the latter stated that the County would retain a Pennsylvania attorney within the next month to bring an action against the McCormicks, and that when judgment was obtained, the County would release the property from tax delinquency liens.

At all times since, the County has sent tax bills and delinquency notices, and has applied current tax payments to the delinquencies. At no time has the County retained a Pennsylvania attorney to bring an action against the McCormicks evidently because, upon reflection, the cost of such action would outweigh the benefit.

Plaintiffs have pleaded two counts. The first asserts that the County is estopped from asserting tax delinquencies as liens on the property. The second contends that defendants have breached their agreement to bring an action against the McCormicks and discharge the liens. The plaintiffs seek a declaratory judgment declaring defendants estopped from asserting tax or sewer delinquencies against the property, or against plaintiffs personally. Plaintiffs request that defendant Kerns be required to mark upon the County tax rolls that the tax lien against the property for all tax years to date is released and extinguished, and also that he be directed to release the sewer lien against the property.

The plaintiffs have moved for summary judgment on the estoppel theory of the case.

There appear to be two lines of authority on the estoppel argument. The facts in the cases vary somewhat and that can account for part of the difference. A New Jersey case, *Kuhl v. Mayor, etc. of Jersey City*, N.J.Ch., 23 N.J.Eq. 84 (1872), held that a municipality supplying erroneous tax information was not estopped from asserting tax liability, because there was no intent that third parties would rely on the information. Another New Jersey case, *City of Bayonne v. Murphy & Perrett Co. et al.*, 7 N.J. 298, 81 A.2d 485 (1951), held no estoppel where the City Clerk had at first told the defendants that the taxes owed were too small in amount to justify collection. When the city later tried to collect, the Court stated that the collection of taxes is a governmental function, and that the city was not estopped by the erroneous act of an agent. *Lovett v. City Treasurer of Detroit*, 286 Mich. 159, 281 N.W. 576 (1938), follows the same line. An inquiry about unpaid taxes was made to the City Treasurer. Upon being told there were none, plaintiffs failed to include unpaid taxes in their damages claim in a separate suit. The Court held that the Treasurer had been acting in a governmental capacity, and that the city was not estopped to assert liability for the taxes. See also *City of San Angelo v. Deutsch*, 126 Tex. 532, 91 S.W.2d 308 (1936).

The Court reached the opposite conclusion in *Curnen v. Mayor et al.*, N.Y.Ct.App., 79 N.Y. 511 (1880). There, buyers of property relied on city records showing property taxes to have been paid. When the parties who originally paid the taxes brought a successful action to recover them (having paid by mistake), the city sought to correct its records and bring an action against the new purchaser. The Court stated that there would be no estoppel if the controversy was between the city and the person originally owing the tax. However, the Court went on to state that when a fact is stated by a city officer, "duly and properly acting within the scope of his authority", the city is estopped to deny its truth as against third parties in innocent reliance on the statement. The Court gave some atten-

tion to the fact that the taxes had actually been paid, but the decision was based largely on a desire to protect the public in justifiable reliance on the representations of city officials. In *Philadelphia v. Anderson*, 142 Pa. 357, 21 A. 976 (1891), a statute provided that tax liens expired on a given date unless they were reentered on the city books. The Court emphasized the duty of the city to have correct records, and found the reliance thereon justified. See also *Seward v. Fisken*, 122 Wash. 225, 210 P. 378 (1922).

The question of municipal exemption from estoppel was addressed by the Court in *Rankin v. City of New York*, 145 App. Div. 838, 130 N.Y.S. 427 (1911), aff'd 204 N.Y. 684, 98 N.E. 1114 (1912). The Court stated that another case's holding "that 'municipal corporations cannot be estopped by the unauthorized or illegal acts of their agents' was undoubtedly accurate under the circumstances in which it was used, but in the present case it is not sought to estop the city by anyone's unauthorized or illegal act, but by the admitted condition of its own records kept for the benefit of the public, and upon which all persons interested were entitled to rely." A city clerk had altered or forged records to show taxes paid when in fact they were not.

In *Curnen, Seward, Rankin* and *Philadelphia v. Anderson, supra*, the official records showed the taxes paid. In *Lang v. City of New York*, 58 Misc.2d 566, 296 N.Y.S.2d 241 (1968), the Court went a step further by denying the city's motion to dismiss, even where the official records showed the tax unpaid, because the city had mistakenly issued a receipt to the sellers upon which the buyers had relied. In the recent case of *Rottjakob v. Leachman*, Mo.Supr., 521 S.W.2d 397 (1975), the Court noted the clear split of authority, but chose to apply the rule of estoppel. In so doing, the Court affirmed the remedy ordered by the trial court, which included striking the taxes from the record.

 I am of the opinion that the rule of estoppel should be followed here. Defendants argue that municipalities are not liable for acts which are governmental in nature, but I agree with the Court in *Rankin v. City of New York, supra*, that there should be estoppel where "it is not sought to estop the city by any one's unauthorized or illegal act, but by the admitted condition of its own records which are kept for the benefit of the public, and upon which all persons interested [are] entitled to rely." 130 N.Y.S. at 431. The rule limiting liability for acts governmental in nature is a useful one, and should be applied in most situations. However, where an agency of government undertakes an act which has one of its chief purposes to bring about the reliance of third parties, such as in supplying information to title searchers regarding unpaid taxes, then the rule of estoppel is reasonably applied.

This reasoning is supported indirectly by the holding in *State ex rel. Davis v. Woolley*, Del.Supr., 9 Terry 34, 97 A.2d 239 (1953). There, the Court denied estoppel after pointing out that "there has been a total failure to prove any sort of 'holding out' to relator which could be construed as the basis of either an implied contract or an estoppel." It is of course the presence of an element of "holding out" here which distinguishes the present case.

 The case at bar should also be distinguished from *Conway v. Wolf Liquor Company*, Del.Supr., 200 A.2d 831 (1964), in which it was held that the state was not estopped from asserting liability for liquor taxes, where the Executive Secretary of the Alcoholic Beverage Commission had stated that a recent legislative act would not take effect until a certain later date. The Court noted that such a decision is more than ministerial, that it involves the exercise of discretion to the extent that it is non-delegable, and that "in matters of this nature," there can be no estoppel. Indeed, the Executive Secretary made a mistake at law, since the Court held that, because the legislation gave no effective date, it took effect immediately. But an individual's mistake of legal opinion is not the same as a mistake of public record where the record is maintained in part to permit public reliance as to tax obligations attaching to real property.

■ I hold for the plaintiffs as a matter of law and grant summary judgment. The County is estopped from asserting any tax or sewer liens against the property or the Allens personally, for the tax year 1972–73, and defendant Kerns is directed to mark the County tax rolls to show that the tax and sewer liens are extinguishable through the 1972–73 tax year. The County is also directed to apply all tax monies paid by the Allens to their obligations for subsequent tax years. IT IS SO ORDERED. This decision does not affect any personal liability of the McCormicks for unpaid taxes.

In view of this holding, it is unnecessary to treat the second count of plaintiffs' complaint, asserting the County's breach of an agreement to bring an action against the McCormicks.