

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

December 17, 1959

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin 11, Texas

Opinion No. WW-753

Re: May the Comptroller of
Public Accounts approve
a certificate of can-
cellation covering taxes
which are actually de-
linquent but which were
not shown on a tax cer-
tificate issued by a
county tax assessor-
collector?

Dear Mr. Calvert:

By two recent letters you have requested the opinion
of this office on the above question. We quote your second
letter:

"This letter will give you additional information
about an error that was made in compiling a Delin-
quent Tax Record in Refugio County, as outlined in
a letter we wrote on July 16, 1959, but did not
deliver to you until a few days ago. The first
error in describing the lots as being located in
St. Mary's Addition to the town of Bayside, Texas,
was made in compiling two year supplements, begin-
ning with the year 1919 or the first recompiled
record covering the period 1919 to 1934, inclusive.
After a supplement or recompiled record has been
completed and approved by the Commissioners' Court
it is forwarded to this Department for approval.
When a record has been recompiled it is used by
the Tax Assessor-Collector until another record is
recompiled in the County; see Article 7336f, Re-
vised Civil Statutes. After the two year supple-
ments or the record covering the years 1919 to 1934
were completed the Tax Assessor-Collector of Refu-
gio County wrote and filed with this Department
recompiled records; one for 1919 to 1940, inclusive;
another for 1919 to 1947, inclusive; and one for
1919 to 1954, inclusive. The description of the
lots in question was erroneously carried on the de-
linquent records after the first error was made
until the last record covering the years 1919 to

1954 was compiled. During the time the lots were incorrectly described on the delinquent record the Tax Assessor-Collector executed certificates certifying that no taxes were delinquent on the lots in question in the original town of Bayside.

"Article 7258a, . . .reads in part as follows: /for clarity we quote more fully from Art. 7258a/

"Section 1. On and after October 1, 1953, the Tax Collector or his deputy of any county in this State, or any city or political subdivision or tax assessing district within any such county shall, upon request, issue a certificate showing the amount of taxes, interest, penalty and costs due, if any, on the property described in said certificate. A charge of not to exceed One Dollar ($1) may be made for each such certificate issued. When any certificate so issued shows all taxes, interest, penalty and costs on the property therein described to be paid in full to and including the year therein stated, the said certificate shall be conclusive evidence of the full payment of all taxes, interest, penalty and costs due on the property described in said certificate for all years to and including the year stated therein. Said certificate showing all taxes paid shall be admissible in evidence on the trial of any case involving taxes for any year or years covered by such certificate, and the introduction of the same shall be conclusive proof of the payment in full of all taxes, interest, penalty and costs covered by the same.

"Sec. 2. If any such certificate is issued or secured through fraud or collusion, the same shall be void and of no force and effect, and any such Tax Collector or his deputy shall be liable upon his official bond for any loss resulting to any such County or city or political subdivision or tax assessing district or the State of Texas, through the fraudulent or collusive or negligent issuance of any such certificate.

"As stated in the third paragraph of our letter of July 16th our question is: Does this Department have the authority to approve a certificate cancelling the taxes that are actually delinquent because the Tax Assessor-Collector during the time the property was erroneously described on the cur-

rent delinquent tax records executed a certificate certifying that no taxes were due on the property? The certificate of cancellation form is prescribed and furnished to the Tax Assessor-Collector by this Department to be used in cancelling taxes that have been erroneously reported delinquent by the Tax Assessor-Collector, and the certificate after being prepared by the Tax Assessor-Collector is approved by the Commissioners' Court and forwarded to this Department for approval. A sample of the certificate is enclosed.

"We are also quite often requested to approve certificates cancelling delinquent taxes where a Tax Assessor-Collector has apparently been negligent in checking his Delinquent Tax Records and has issued a certificate certifying that no delinquent taxes are due on a piece of property. In other words the Delinquent Tax Record actually shows taxes delinquent on a piece of property, but the Tax Assessor-Collector overlooks the delinquency and writes a certificate certifying that the taxes have been paid and at a later date he or his successor discovers that the taxes are due and executes another certificate covering the delinquency. From this statement of facts, does the Comptroller have the authority to approve a certificate cancelling the taxes even though they are actually delinquent?"

You have given us the substance of a brief furnished your office advocating approval of the cancellation certificate, which cites Arts. 7346 and 7347, V.C.S., in support of the proposition that such delinquent tax is unenforceable as against the real estate in the hands of an innocent purchaser who relied upon the erroneous delinquent tax record (previous to the latest recompilation), or upon the Assessor-Collector's certificate showing no tax due. Those articles read as follows:

Article 7346:

"Whenever any commissioners court shall discover through notice from the tax collector or otherwise that any real property has been omitted from the tax rolls for any year or years since 1884, or shall find that any previous assessments on any real property for the years mentioned are invalid, or have been declared invalid for any

reason by any district court in a suit to enforce the collection of taxes on said properties, they may, at any meeting of the court, order a list of such properties to be made in triplicate and fix a compensation therefor; the said list to show a complete description of such properties and for what years such properties were omitted from the tax rolls, or for what years the assessments are found to be invalid and should be canceled and reassessed, or to have been declared invalid and thereby canceled by any district court in a suit to enforce the collection of taxes. No re-assessment of any property shall be held against any innocent purchaser of the same if the tax records of any county fail to show any assessment (for any year so re-assessed) by which said property can be identified and that the taxes are unpaid. The above exception, with the same limitation, shall also apply as to all past judgments of district courts canceling invalid assessments. Acts 1905, p. 318"

Article 7347:

"When said list has been so made up the commissioners court may, at any meeting, order a cancellation of such properties in said list that are shown to have been previously assessed, but which assessments are found to be invalid and have not been canceled by any former order of the commissioners court, or by decree of any district court; and shall then refer such list of properties to be assessed or re-assessed to the tax assessor who shall proceed at once to make an assessment of all said properties, from the data given by said list. . . .provided, that the certificate of any tax collector given during his term of office that all taxes have been paid to the date of such certificate on any certain piece of property, which is fully described in such certificate, or if the tax rolls of any county fail to show any assessments against such property sufficient to identify it, and that the same was unpaid at the dates such rolls may have been examined to ascertain the condition of any property as to taxes unpaid, this shall be a bar to any reassessment of such property under this law for any years prior to the date of such certificate, or such examinations; provided, that the property referred to, when reassessed, shall be held by an innocent purchaser,

who has relied upon the correctness of such certificate, or the tax rolls heretofore referred to. Id."

We do not believe that these two articles apply to situations such as the one under discussion, involving delinquent taxes. These articles were intended to provide a method for the counties to tax property which had (1) escaped taxation because omitted from the tax rolls or (2) on which a previous assessment had been found invalid. Neither such event has occurred here. Even should they be thought to be applicable, protection thereunder is afforded to innocent purchasers only in certain cases from a reassessment of property which had previously been invalidly assessed, but not in any case where the property was omitted from the tax rolls. Attorney General's Opinion No. V-180. The present fact situation would, if anything, fall within that category wherein there was an omission from the rolls (a search of the rolls would reveal no such lots listed in the Town of Bayside), therefore an innocent purchaser would not be relieved from liability for such taxes. These articles, then, furnish no basis for authority to approve a certificate canceling the taxes.

We now turn to a consideration of the effect of Art. 7258a upon this and, as mentioned in your last paragraph, similar situations.

Art. 7258a was first enacted in 1929. Its provisions were specifically made applicable to counties containing 210,000 population or more. (Acts 1929, 41st Leg., 2nd C.S., p. 153, Ch. 77) This deminimus limitation was removed by amendment of the 53rd Leg. (1953), and it was thereby made applicable to every county in the State "On and after October 1, 1953. . . ." (Acts 1953, 53rd Leg., p. 1052, ch. 436, §1) In substance, insofar as pertinent here, it otherwise remained the same. The constitutionality of the article was upheld by Amerada Petroleum Corporation v. 1010.61 Acres of Land, etc., 146 F.2d 99 (C.C.A. 5th, 1944). In conformity with this decision and basing its conclusion thereon, Attorney General's Opinion No. V-1143 (1951) overruled two opinions of this office written during prior administrations which had declared the Act in violation of two provisions of the Constitution of Texas. See Attorney General's Opinion No. 2780 (1929) and Attorney General's Opinion Book 383, page 394 (1938).

In the Amerada case, the statute had been attacked as violating the constitutional provisions which prohibit the legislature from releasing any inhabitants or property from

payment of taxes (Art. VIII, Secs. 10 and 15) and from re-
leasing any indebtedness, liability or obligation to the
State (Art. III, Sec. 55). The question before the court
was the liability of a purchaser who had relied upon a cer-
tificate of the Assessor-Collector, showing no taxes due,
for payment of taxes which were actually delinquent. In
negativing a constitutional violation, the Court said:

"The statute under construction here does not
purport to surrender or release to anybody any tax
that is really due. . . .It is not intended to
violate, it does not operate as a violation of,
the invoked provisions of the Constitution against
releasing debts or obligations." (Emphasis ours.)

"When the purpose of the statute in question
here, to protect innocent purchasers against
secret liens, is considered in the light of its
strong terms, completely avoiding all collusive or
fraudulent certificates and making the collectors
liable on their bonds for losses resulting from
their collusive, fraudulent, or negligent issuance,
it is quite plain that the Legislature did not
intend to release or extinguish, the act does not
have the effect of releasing, taxes."

The court thereby upheld the validity of the statute
by looking to its purpose of enactment, that is, the protec-
tion of an innocent purchaser, who relies upon the correctness
of a tax certificate, from undisclosed tax claims. It oper-
ates to import absolute verity to such certificate for the
sole purpose of protecting this purchaser. But the act of
issuing an erroneous certificate does not, cannot, erase from
the record taxes which are actually due. The claim is still
a claim. It may be enforced against the person who owned the
property at the time such delinquent taxes accrued. Winters
v. Independent School Dist. of Evant, 208 S.W. 574 (Tex.Civ.
App. 1918), err. dism'd.; Humble Oil & Refining Co. v. State,
3 S.W.2d 559 (Tex.Civ.App. 1927), err. dism'd. By its very
terms, the statute declares the issuing collector liable on
his bond for the loss if the certificate was issued through
fraud, collusion, or negligence.

It is a cardinal rule of statutory interpretation
that the construction which would uphold a statute's consti-
tutionality should be preferred over an alternative which
would render it void. Greene v. Robison, 117 Tex. 516, 8
S.W.2d 655 (1928); McKinney v. Blankenship, ___ Tex. ___,
292 S.W.2d 691 (1955); 39 Tex.Jur., Statutes, Sec. 111. To

declare that Article 7258a has the effect of canceling delinquent taxes from the record would place it within that class of Acts specifically forbidden by the Constitution.  Ollivier v. City of Houston, 54 S.W. 940 (1899), aff'd. 54 S.W. 943 (1900).

You are therefore advised that the Comptroller is not authorized to approve a certificate canceling taxes which are actually delinquent but which were not shown on a tax certificate issued by a tax assessor-collector.

What we have said necessarily also applies to the specific fact situation which you set forth, even though there was an error in the current recompiled delinquent tax record of the county at the time such certificate was issued. We do not pass upon the question of liability for these particular taxes.  We merely point out in passing that Art. 7336F, V.C.S., places primary responsibility upon the tax assessor-collector to make or have made such recompilations of delinquent taxes, provision being made where he is unable to do so.  We also point out that, if these particular certificates showing no taxes due, were issued prior to October 1, 1953, none of the provisions of Art. 7258a are applicable to the situation, since Refugio County, according to the last preceding Federal census contained less than 210,000 population, the minimum required for the article to apply prior to that date.

## SUMMARY

Where County Tax Assessor-Collector issued erroneous certificate showing no taxes due on certain property but in fact delinquent taxes were due, Comptroller of Public Accounts is not authorized to approve a certificate canceling such delinquent taxes from the record.

Very truly yours,

APPROVED:

WILL WILSON
Attorney General

OPINION COMMITTEE:
W. V. Geppert, Chairman

James H. Rogers
W. R. Scruggs
Jack N. Price
Houghton Brownlee, Jr.

By James R. Irion
James R. Irion
Assistant

JRI:bct

REVIEWED FOR THE ATTORNEY GENERAL:
By: Leonard Passmore