BENJAMIN F. VOORHIS et al., Appellants, *v.* CYRUS OLMSTEAD et al., Respondents.

| 66 | 113 |
|-----|-----|
| 111 | 541 |

Plaintiffs contracted to sell to B. & Co. a quantity of cotton, in store, to be paid for on delivery. The N. Y. W. & S. Co. loaned to B. & Co. a sum of money, receiving as security an invoice and written pledge of the cotton, and an order upon the warehouseman. Upon presentation of the order, and while the cotton was being weighed and examined for delivery, the warehouseman, with the consent of plaintiffs, gave to the N. Y. W. & S. Co. the ordinary warehouse receipt for the cotton. This was on Saturday. B. & Co. did not pay for the cotton, and on the next Tuesday failed. In an action to recover possession of the cotton, *held*, that, upon the occasion of the loan to B. & Co., the N. Y. W. & S. Co. acquired no title to the cotton, as against plaintiffs, as it parted with its money solely upon the engagement of that firm, and upon their order; that no title was acquired at the time of the delivery of the warehouse receipt, as no value was parted with upon the faith of it; but that, upon receiving the receipt, said company had a right to repose upon it as a ratification of the prior pledge, and having relied upon it, and thereby having been induced to refrain from any attempt to recover the loan or secure an indemnity, plaintiffs were estopped from claiming title.

It is not necessary in such case for the pledgee of property to show that a demand of the money loaned would necessarily have resulted in its recovery; it is enough to show that his position was altered by relying on the evidence of title, and a consequent abstaining from action.

(Argued April 19, 1876; decided April 25, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department in favor of

the defendants, Olmstead and the New York Warehouse and
Security Company, entered upon an order denying motion for
a new trial, and directing judgment on a verdict. (Reported
below, 3 Hun, 744; 6 T. & C., 172.)

This was an action of replevin to recover possession of 226
bales of cotton.

On the 2d May, 1868, plaintiffs sold the cotton then in store
with defendant, Cyrus Olmstead, a warehouseman in New
York, to George E. Biddle & Co., cotton dealers of that city, to
be received and paid for within ten days. On the seventh of
May, said firm made a written call on the plaintiffs for deliv-
ery of the cotton. The weighing and inspecting the cotton
for delivery began on Friday, the eighth; on that day Biddle
& Co. applied to defendants The New York Warehouse and
Security Company for a loan upon this and other cotton.
The said company loaned him $44,000, receiving as security
an invoice and written pledge of the cotton, and an order on
Olmstead therefor. The order was presented the same day;
Olmstead stated that the cotton was being turned over, and
directed the person presenting the order to come the next day,
when the receipt would be given. Plaintiffs, upon being
advised of the presentation of the order, directed the ware-
houseman to give a receipt. Accordingly, on Saturday,
Olmstead issued and delivered to the company an ordinary
negotiable warehouse receipt for the cotton, acknowledg-
ing receipt thereof on storage for account of George E.
Biddle & Co. The same night, after business hours, plain-
tiffs having received the weigher's return for the cotton, made
out a bill, with weigher's return attached, and sent it to
Biddle & Co.'s office. On Monday, the eleventh, plaintiff
sent for a check in payment for the cotton, but did not suc-
ceed in getting it, and on Tuesday, the twelfth, Biddle &
Co. stopped payment. On Wednesday they first notified
defendant, the warehouse and security company, of their
claim. Biddle & Co., on receiving the check for the loan of
$44,000, deposited it to their account in the National City
Bank. At the close of bank hours on Friday, there remained

to their credit in that bank $52,377.85; and at the close of business on Saturday, $31,878.96. At the time Biddle & Co. stopped payment, this balance had all been drawn out, and no assets could be discovered.

The court, on motion of defendants' counsel, directed a verdict for defendants, Olmstead and The New York Warehouse and Security Company, to which plaintiffs' counsel duly excepted. A verdict was rendered accordingly. Exceptions were ordered to be heard at first instance at General Term.

*Wm. A. Beach* for the appellants. Defendants acquired no color of title under what is known as the factor's act. (6 Edms. Stat., 668; 4 id., 461; *Jenni* v. *McNamee*, 45 N. Y., 614.) The sale being for cash, payable on delivery, no title would pass until the delivery was completed in every point and the purchase-money paid, or its payment waived and credit given. (*Kein* v. *Tupper*, 52 N. Y., 550; *Ballard* v. *Burgett*, 40 id., 314; *Hutchings* v. *Monger*, 41 id., 155; *McNeil* v. *Tenth Nat. Bank*, 46 id., 325; *Coghill* v. *H. and N. H. R. R. Co.*, 2 Gray, 545; *Leighton* v. *Stevens*, 1 App., 154; *Churchill* v. *Bailey*, 1 Shif., 64; *Comstock* v. *Smith*, 10 Shep., 202; *Luby* v. *Bundy*, 9 N. H., 298; *Maxwell* v. *Briggs*, 17 Vt., 176; *Bradley* v. *Arnold*, 16 id., 382; *Fairbank* v. *Phelps*, 22 Pick., 535; *Dresser M. Co.* v. *Waterston*, 3 Met., 9; *Lehigh* v. *Field*, 8 W. & L., 232; *McBride* v. *White Lead*, Geo. [Dals.], part 1, 165; *Bennett* v. *Sims*, 1 Rice, 421; *Bradshaw* v. *Thomas*, 7 Jerg., 477; *Reeves* v. *Harris*, 1 Bailey, 563; *Marston* v. *Baldwin*, 17 Mass., 606; *George* v. *Stubbs*, 26 Me., 243; *Herring* v. *Willard*, 2 Sandf., 418; *Buckmaster* v. *Smith*, 22 Vt., 409; *Etty* v. *Aldrich*, 46 N. H., 127; *Armington* v. *Houston*, 38 W., 448; 36 Mo., 479; *Patton* v. *McCane*, 15 B. Mon., 555; *Acker* v. *Campbell*, id., 372; *Pond* v. *Bradley*, 9 G. & J., 220; *Blanchard* v. *Child*, 7 Gray, 155; *Penbank* v. *Crooker*, id., 158; *Goodwin* v. *May*, 23 Geo., 205; *Diehon* v. *Bigelow*, 8 Gray, 159; *Gragin* v. *Coe*, 29 Conn., 51; *Plumer* v. *Stinly*, 16 Ind. 480.).

*Joseph H. Choate* for the respondents. Plaintiffs are estopped from retaking the cotton by the warehouse receipt to the order of Biddle. (*Contl. Bank* v. *Bank of Comm.*, 50 N. Y., 577; *Knights* v. *Wiffen*, L. R., 5 Q. B., 660; *Casco Bank* v. *Keene*, 53 Me., 103; *Irving Bank* v. *Wetherald*, 36 N. Y., 335; *Del. Bank* v. *Jarvis*, 29 id., 226; *St. John* v. *Roberts*, 31 id., 442; *M. and Tr. Bank* v. *Hazard*, 30 id., 226; *Finnegan* v. *Carraher*, 47 id., 493; *Dezell* v. *Odell*, 3 Hill, 218.) The advance made by defendants on the cotton constituted them *bona fide* purchasers, and they had the paramount right when this action was commenced. (*Cartright* v. *Wilmerding*, 24 N. Y., 533; Benj. on Sales [2d Eng. ed.], 342; *Mowrey* v. *Welch*, 13 Wend., 570; *Caldwell* v. *Bartlett*, 3 Duer, 341; *Keyser* v. *Harbeck*, 3 id., 373, 391; *Derbrow* v. *Macdonald*, 5 Bosw., 130; 39 N. Y., 233; *Wilmot* v. *Richardson*, 7 Bosw., 590; *White* v *Garden*, 10 C. B., 519; *Kingsford* v. *Merry*, 11 Exch., 537; *W. Tr. Co.* v. *Marshall*, 37 Barb., 509.) There was no evidence of any *mala fides* on the part of defendants that would have warranted a verdict for plaintiffs on that ground. (*Welch* v. *Sage*, 47 N. Y., 143; *Belmont* v. *Hoge*, 35 id., 67; *Birdsall* v. *Russell*, 29 id., 249; *Murray* v. *Lardner*, 2 Wal., 121.)

ALLEN, J. The New York Warehouse and Security Company acquired no title to the cotton as against the plaintiffs upon the occasion of the loan to Biddle & Company. The company did not part with its money upon the apparent ownership of the property by Biddle & Company, but relied solely upon the engagement of the latter firm, and their order upon the warehousemen for the ordinary warehouse receipt. At the time of the delivery of the warehouse receipt to the company no money was advanced or value parted with upon the faith of such receipt, and therefore no title was then acquired to the cotton and the company as pledgees can only hold the cotton on the ground that the plaintiffs are estopped from claiming title to it by some act on which the company has relied and been induced to vary its position. The plain-

tiffs voluntarily consented that the warehouseman should give the usual storage and warehouse receipt to Biddle & Company as owners, and thus invested them with the possession of the property and the usual documentary evidence of title, so that they are estopped, as against those dealing with Biddle & Company, upon the faith of such apparent ownership, from reclaiming the property or asserting title to it. So far as innocent third persons are concerned, who have been influenced in their actions by the apparent ownership of Biddle & Company, the plaintiffs must be deemed to have waived the payment of the purchase-price of the cotton, as a condition precedent to the actual vesting of the title. The rule prevails in such a case, that where one of two innocent persons must suffer by the fraud or wrongful act of another, the loss shall fall upon him by whose act or neglect the fraud or wrongful act has become possible. The plaintiffs gave credit to Biddle & Company and enabled them to deal with the cotton as their own, by investing them with the possession and the *indicia* of ownership. The security company risked their money upon the faith of the promise of Biddle & Company to procure and deliver the warehouse receipt for the property; but upon the receipt of that they had a right to repose upon it as evidence of Biddle & Company's title and a ratification of the prior pledge of the cotton for the loan; and the plaintiffs, having consented to the issuance of the receipt by the warehouse, must be held to have assented to the transfer or other use of it by Biddle & Company and that faith should be given to it as to like instruments. Had the company not obtained the warehouse receipt, they might have resorted to some process for the recovery of their loan or other indemnity against loss. The receipt was delivered on Saturday, and probably in the morning; but whether earlier or later in the day is not material, as Biddle & Company did not fail in business until Tuesday, giving ample time to the company to take measures to protect itself. The case cannot be distinguished from *Knights* v. *Wiffin* (L. R., 5 Q. B.,

660). There M., having purchased a quantity of barley from the defendant without having paid for the same, sold it to the plaintiff and received the pay therefor, giving an order for the delivery to the plaintiff. Upon being shown the delivery order, the defendant said it was all right, and that when a note for forwarding was received he would ship the barley. M. became bankrupt and the defendant, as unpaid vendor, refused to deliver the barley. The court held him estopped by his statement from denying that the goods had passed to the plaintiff; for the reason that by making such statement he induced the plaintiff to rest satisfied under the belief that the property had passed and so to alter his position by abstaining from demanding back the money which he had paid to M. Here, as in that case, the position of the security company was altered through the plaintiff's conduct. The plaintiffs knew, when they assented to the delivery of the warehouse receipt, that it would be regarded as evidence of title in Biddle & Company and that any party to whom it was transferred would, according to the well known usage of the trade, rest satisfied. The company did rest satisfied in the belief that the property had by the negotiation of the receipt been passed to it. Blackburn, J., in the case cited uses this language : " If the plaintiff had been met by a refusal on the part of the defendant he could have gone to Moris and have demanded back his money. Very likely he might not have derived much benefit if he had done so, but he had a right to do it." It was not necessary in the present instance for the pledgee of the property to show that a demand of the money loaned would certainly have resulted in its recovery. It is enough that its position was altered by relying on the evidence of title furnished to Biddle & Company by the plaintiffs and abstaining from action. The same principles were applied in *The Continental National Bank* v. *The National Bank of the Commonwealth* (50 N. Y., 575); and *Knights* v. *Wiffin* is cited with approval. *Barnard* v. *Campbell* is entirely consistent with both cases, and also cites *Knights* v. *Wiffin* as authority (55 N. Y., 456). There

was no evidence to show any want of good faith on the part of the security company, in the transaction or any connection between the loan of this money to Biddle & Company and the payment of other loans by the latter to it, or that any part of the money loaned upon this cotton was repaid to the company.

The case was well disposed of in the court below. Judgment must be affirmed.

All concur.

Judgment affirmed.