JONAS WEIL and BERNHARD MAYER, Appellants, *v.* THE CITY OF NEW YORK, Respondent.

First Department, July 13, 1917.

**Equitable estoppel — action for cancellation of tax lien — misstatements in city tax records preventing mortgagee from discovering tax liens — reliance upon accuracy of official records.**

Where the holders of a mortgage, providing that the principal sum should become due at the option of the mortgagee after default in the payment of any tax or assessment for sixty days, before taking the mortgage, examined the tax books and records in the department of taxes maintained and kept by the city of New York and found no tax liens against the property, and before executing a renewal of said mortgage made a further examination of the tax records, and thereafter examined them from year to year, and

it was subsequently discovered that the taxes against the mortgaged property having been erroneously paid by another were refunded to said person and made a lien against the mortgaged premises, said mortgagees are entitled to have the tax lien declared invalid as to their mortgage on the ground of equitable estoppel, they having changed their position in reliance upon the statements made by the defendant in its tax records to the effect that there were no tax liens upon the premises.

The fact that a foreclosure by the plaintiffs at the time when the misstatement was made in the tax records would not have enabled them to recover a greater proportion of their money than they could have recovered had they foreclosed at the time of the trial does not prevent a recovery on the theory of an equitable estoppel.

It was not necessary for the plaintiffs to show actual damage other than the loss of valuable right of foreclosure which they would have had if the misrepresentation had not been made.

A party has the right to rely upon the accuracy of official records.

APPEAL by the plaintiffs, Jonas Weil and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 4th day of August, 1916, upon the decision of the court dismissing the complaint after a trial at the New York Special Term.

*Nathan D. Stern*, for the appellants.

*William H. King*, for the respondent.

PAGE, J.:

The action is brought to obtain the cancellation of a tax lien upon certain premises in the city of New York.

The plaintiffs are the holders of a second mortgage upon the said premises which was obtained under the following circumstances: On May 27, 1908, a Mrs. Antonia Teitelbaum was the owner of the premises, and on that day executed to the plaintiffs a bond in the sum of $6,000, together with a mortgage of the premises to secure the payment of the same, which mortgage recited that it was given to secure the performance of a lease of sixteen houses executed on that day by the plaintiffs to the owners of the premises. This mortgage was duly recorded, and thereafter the mortgagee defaulted

in the performance of the terms of the lease which it was given to secure, and at that time there was due and payable to the plaintiffs under the lease the sum of $5,000. On the 20th of December, 1909, the plaintiffs made an agreement with the said Antonia Teitelbaum which recited that Teitelbaum had defaulted in the performance of the covenants and conditions contained in the lease and remained indebted to the plaintiffs in the sum of $5,000, and in consideration thereof it was agreed that the said mortgage should become a lien on the premises in the sum of $5,000, which sum should be payable in installments of $200 beginning on the 1st day of August, 1910, and payable half-yearly thereafter until the 1st day of February, 1915, when the balance then remaining unpaid should become due and payable. The mortgage contained a provision that the whole principal sum should become due at the option of the mortgagee after default in the payment of any installment of principal or after default in the payment of interest for twenty days or *after default in the payment of any tax or assessment for sixty days.*

It is found by the learned trial justice that before the first execution and delivery of the bond and mortgage on the 27th day of May, 1908, the plaintiffs caused an examination of the tax books and tax records of the department of taxes maintained and kept by the defendant, city of New York to be made, and that upon the said records it appeared that all taxes theretofore assessed against the said property had been duly paid to the city of New York, and that in accepting the said bond and mortgage and giving credit to the mortgagor the plaintiffs relied upon the state of facts disclosed by the said examination of the said tax records. These being official records she had the right to rely upon their accuracy. It is also found as a fact that before the execution of the aforesaid agreement between the plaintiffs and the owner of the property on the 20th day of December, 1909, the plaintiffs caused the tax books and records of the department of taxes of the city of New York to be examined, and ascertained that it appeared from the said books and records that the taxes up to and including the year 1909 had been duly paid, and that the plaintiffs relied upon the evidence of the payment of taxes as appeared upon said records at the time that they

made and entered into the agreement on the 20th day of December, 1909. It is also found that thereafter, from year to year, the plaintiffs caused the tax books and records of the department of taxes of the city of New York to be examined each year and ascertained upon such examination that the said taxes in each of said years had been duly paid, which facts appeared from the said records. It is further found that from time to time the interest on the said bond and mortgage was duly paid as the same accrued, and that by reason of the entries contained in the tax books and records of the department of taxes, the plaintiffs were prevented from exercising the option reserved to them as mortgagees in their said mortgage of declaring the whole principal due on the said mortgage in the event of the failure of the owner of said property to pay any tax or assessment for sixty days, and the plaintiffs did not, because of such entries, exercise said option and were further prevented from foreclosing the said mortgage because of the non-payment of said taxes and did not so foreclose the same.

It appears further that from the years 1906 to 1911, inclusive, the premises covered by the mortgage, together with certain adjoining premises, were in each year duly assessed for taxes as one undivided lot, and during those years the taxes upon the entire lot including the premises covered by the mortgage were duly paid and entered as paid upon the books and records of the receiver of taxes. The taxes during each of these years 1906 to 1911 were assessed to and paid by one William Rowland, the owner of the other portion of the undivided lot, and in the year 1912 the defendant, city of New York, upon discovering that the taxes had been paid by Rowland upon the whole lot in error refunded to Rowland the amount apportioned to the premises owned by Teitelbaum and charged the same, amounting to $1,620.27, plus interest and penalties, as a lien against the premises covered by the plaintiffs' mortgage, which as a tax lien is superior to the lien of the mortgage.

The plaintiffs in this action seek to have the lien declared invalid as to their mortgage, on the ground of equitable estoppel, claiming that they changed their position in reliance upon the statements made by the city of New York in its

tax records, to the effect that there were no tax liens upon the premises.

The learned trial justice has found further that in 1908 when the plaintiffs first took a mortgage upon the premises there was a prior mortgage thereon, upon which $17,000 as principal was due, and that at said time the premises were worth $19,000. He has also found that the present value of the premises is $19,000 and that they have had that value ever since the plaintiffs first took the second mortgage thereon. He further finds that in the meantime the lien of the first mortgage has been reduced by $500 in principal, and the second mortgage has been reduced from time to time, until at the time of the trial there was but $3,000 due thereon in principal. From these facts the learned justice has reached the conclusion that, inasmuch as it does not appear that, had the plaintiffs foreclosed their mortgage at the time when the misstatement was made in the tax records, they would have been able to recover a greater proportion of their money than they could have recovered had they foreclosed at the time of the trial, there has been no damage to the plaintiffs. From this he concludes that damage being a necessary element of an equitable estoppel, the plaintiffs are unable to recover and accordingly the complaint was dismissed.

In my opinion this is error. In the first place as to the taxes which accrued prior to the year 1908 when the mortgage was first taken by the plaintiffs, it is apparent that one of the inducements which led the plaintiffs to accept the lien upon the property was the apparent lack of any prior liens for tax thereon, and as to the taxes for the years 1906, 1907 and 1908, it is probable that the plaintiffs would not have accepted the mortgage unless said tax liens were extinguished, had it known of their existence, so that the plaintiffs have clearly been damaged to the extent thereof. As to the taxes which accrued between 1908 and December, 1909, when the mortgage was in effect renewed for $5,000, it is found that the plaintiffs renewed the mortgage in reliance upon the records, showing no unpaid taxes upon the property and that every year thereafter they made inquiry and discovered that no taxes were on record against the property. Thus the plaintiffs were prevented each year from exercising

the option reserved to them in the mortgage of declaring the whole principal sum to be due and foreclosing the mortgage for non-payment of the taxes.

I am of the opinion that under the authorities this was a sufficient change of position by the plaintiffs to support an equitable estoppel and that it is not necessary to show further that had the plaintiffs actually foreclosed the mortgage they would have been better off than had they foreclosed at the time of the trial of this action.

In the case of *Voorhis* v. *Olmstead* (66 N. Y. 113), relied upon by the appellants, the Court of Appeals said in a similar case of equitable estoppel by conduct, in reliance upon which certain money was advanced by the defendant: " It was not necessary in the present instance for the pledgee of the property to show that a demand of the money loaned would certainly have resulted in its recovery. It is enough that its position was altered by relying on the evidence of title furnished to Biddle & Company by the plaintiffs and abstaining from action."

Thus it is not necessary to show actual damage to the plaintiffs, in the case at bar, other than the loss of valuable rights which they would have had if the representation had not been made. (See, also, *Continental Nat. Bank* v. *National Bank of Commonwealth,* 50 N. Y. 575.) In a recent case in the Court of Appeals (*Rothschild* v. *Title Guarantee & Trust Company,* 204 N. Y. 458), about a year after the making of a loan by the defendant trust company on the security of a bond and mortgage purporting to have been executed by one Caroline Strauss since deceased, but which bond and mortgage was in fact a forgery executed by her son, the said Caroline Strauss, with knowledge of the forgery, caused to be paid to the trust company two installments of interest due on the mortgage. In an action against the trust company to compel the cancellation of the mortgage, it was held that payment of the interest by the decedent effected an equitable estoppel against her and her estate. The court said at page 463: " Caroline could not by act or declaration diminish or thwart that right and not incur responsibility. The defendant was entitled to have it and the relations between itself and Baldwin F. Strauss remain unaffected by any act or inter-

ference on her part. It believed that the apparent lien upon her property created by the mortgage apparently signed and acknowledged by her secured the payment of the $2,000 it had advanced under that belief. She knew such fact and the further fact that her signature was a forgery. The right to foreclose the lien securing the interest, upon a default in its payment, is usual and ordinary, and, it may be presumed, such fact was likewise known to her. *We are not required to consider what results an action for the foreclosure of the mortgage, because of a default in the payment of interest due October 1, 1900, would have produced.* A reasonable, if not necessary, inference would seem to be that a disclosure of the forgery or a completed foreclosure would be consequent. It is sufficient, however, for the purposes of our review that, *if the interest had not been paid, the right to foreclose would have arisen and that she having full knowledge of the facts paid the interest and thus prevented the upspringing of the right and the exercise of it by the defendant.* (*Continental Nat. Bank* v. *National Bank of the Commonwealth,* 50 N. Y. 575; *Voorhis* v. *Olmstead,* 66 N. Y. 113.) She by making the payments recognized the mortgage and the lien it seemed to create as real and existing, extended their existence, and retarded or intercepted the natural growth and development of the rights and relations between the defendant and her son, and benefited her son and, presumptively, within her contemplation, herself." (The italics are mine.)

And so in the case at bar the plaintiffs were deprived, by the representations of the defendant, of the right to foreclose the mortgage or even the right to threaten a foreclosure of the mortgage by which means they might have enforced payments of the taxes by the owners of the property. This was a valuable right and the plaintiffs were deprived of it and their relationship with the owner disturbed and interrupted by reason of the representations of the defendant.

In my opinion this is sufficient to work an equitable estoppel, and it was not necessary that it appear that upon a foreclosure of the property at that time or at any time since then, the plaintiffs would be able to secure more of their money than they would at the present time.

The judgment appealed from should be reversed, with

costs, and judgment directed in favor of the plaintiffs decreeing the tax lien to be inferior to the lien of the plaintiffs' mortgage, and enjoining the sale thereof, except subject to the mortgage of the plaintiffs.

CLARKE, P. J., DOWLING and DAVIS, JJ., concurred.

SCOTT, J.:

I concur, as to the taxes for the years 1906, 1907 and 1908.

Judgment reversed, with costs, and judgment directed in favor of plaintiffs as stated in opinion. Order to be settled on notice.