ALVIN R. CAMPBELL v. CHARLES N. DAUB ET AL., Appellants.—159 S. W. (2d) 683.

Division Two, June 10, 1941.

Rehearing Denied, March 13, 1942.

*Alfred H. Kerth* and *Dalton W. Schreiber* for appellants.

*C. L. Shotwell* for respondent.

WESTHUES, C.—Respondent Campbell filed this suit, on February 24, 1938, against Charles N. and Frieda Daub, for possession of the following described real estate situated in St. Louis county, Missouri: Lot number 2 of the subdivision of the John Jones estate in section 4, township 44 north, range 5 east, containing 17.98 acres. On June 1, 1938, the following named persons filed a motion to be made parties defendants, which motion was granted. The parties thus made defendants were: Edward Broeker, Louisa Siebert (also spelled Seibert in the record), William Broeker, Laura Broeker, Arthur Meier, Oscar Meier, Louise Meier, Pauline Ellerbrecht, Ernest Broeker and Paul S. Limerick, curator of the estate of Carrie Broeker, a *non compos mentis*. These defendants and the defendants named in the petition filed an answer and a cross bill in which they asserted title to the lands, asked for the cancellation of a tax deed through which plaintiff claimed title and made a tender of all sums paid by plaintiff with interest for the tax deed. Upon a trial the court found the issues in favor of the plaintiff and entered a judgment for possession of the land, also a judgment for $300 as damages, and fixed the rental value of the land at $12.50 per month. The court found against the defendants on their cross bill. From that judgment defendants appealed.

The evidence disclosed the following facts: The defendants were the legal heirs at law of Charles Broeker, who died on January 9, 1917, and who owned the land here in question. The widow, Carrie Broeker, was adjudged a *non compos mentis* in the year 1922, and thereafter was confined in a state institution. Edward W. Terry was appointed her guardian. The defendants, Charles and Frieda Daub, nee Broeker, occupied the land in question for more than twenty years prior to the filing of this suit and paid a rental to the guardian of Carrie Broeker. Terry, the guardian, died on July 24, 1934. The record shows that in August, 1932, the guardian filed a settlement which showed a balance on hand of $291.67. In July, 1934, a settlement was filed which showed no balance. This settlement also disclosed a loss of $66.99 through the closing of a bank. The guardian's

wife filed an application to be appointed guardian in all of the estates in which her husband had been guardian. There were a number of these. She did not qualify in the Carrie Broeker estate because the assets had all been spent. After the death of Terry, Laura M. Broeker and two of her brothers inquired at the probate court about the estate of their mother. They received the information that Mrs. Terry had been appointed guardian in lieu of her husband. Later that year, 1934, these parties went to the collector's office to see if there were any taxes due on the property here in question. They were told that all taxes had been paid, or that no taxes appeared to be unpaid. In March, 1937, the plaintiff in this case went to the farm and showed the defendants, Charles and Frieda Daub, a tax deed and demanded possession of the place. His request was refused and in February, 1938, plaintiff filed this suit. The tax deed, purporting to convey title to plaintiff,. was executed pursuant to a sale for delinquent taxes for the year 1929. The sale was had on November 8, 1934. The certificate of purchase was issued in the name of Helen Hauhart and the price paid was $18.25. Plaintiff claimed to have purchased this certificate for $19.71. He testified that his total outlay, being the payment of taxes on the land, including interest, was $262.24. The only evidence of the value of the land was that it was worth about $2500.00. The defendants testified that ▇▇▇▇ they never heard of the tax sale until plaintiff claimed possession of the land. The defendants offered to refund to plaintiff, with interest, all sums paid by him. This offer was refused and the tender was kept alive.

The defendants in their cross bill attack the tax sale and deed upon a number of grounds. These points were briefed here on appeal. We are of the opinion that the tax sale constituted a fraud upon these defendants. They had no reason to believe that the taxes, at least up to the year 1934, had not been paid. It was the duty of the guardian to pay the taxes, since he was representing the owner of the homestead. He had been paying taxes on the land for a number of years. In 1932 the guardian had on hand $291.67. In 1934 his settlement showed that he had lost $66.99 of the estate's money in a closed bank. The guardian, therefore, had sufficient funds on hand to have paid all the taxes due, including the year 1934. When he died defendants made inquiry, and were informed the taxes had been paid.. The evidence clearly showed that the defendants exercised ordinary diligence in the protection of their property. The name "Broeker" appeared in the tax books as "Brocker." That may have accounted for the misinformation given them. That, however, was no fault of the defendants. The land was described in the notice of sale as, "Jones Est. lot 2, 17.97 Acres, Sec. 4." The correct description was lot 2 of the subdivision of the John Jones Estate. The meager description given in the notice was no fault of the defendants. The plaintiff, who purchased the property, owned. the adjoining . land.

He was acquainted with the defendants and knew that the widow was under guardianship. The record showed that he said not a word to the occupants of the land, or to any of the defendants, about the tax sale, until he thought the time in which the land could be redeemed had expired. It was not his duty to notify the defendants, but a person who seeks to enrich himself at his neighbor's expense, under circumstances as appeared in this case, stands in poor grace before a court of justice. Plaintiff in his brief in this court stated that the dower and quarantine right of Carrie Broeker expired in 1927; that her homestead right did not include all of the land but only property of the value of $1500.00. If that be true, then under Section 9954a of the Jones-Munger Act, Laws of 1933, page 434, plaintiff was entitled to possession of the land one year after the sale took place, yet, he made no claim until after two years had elapsed. The reason for the delay is apparent. Yet plaintiff in his brief accuses the defendants of laches because the defendants did not file suit against him until he sued for possession a year after making demand. The price paid for the land by the plaintiff was shockingly inadequate. It was worth at least $2,000.00 or more. Plaintiff conceded it was worth more than $1500.00. The sale price was $18.25, being the exact amount of the tax due. The failure to pay the tax was caused through the negligence of the guardian appointed by a state court. The officials, whose duty it was to collect the taxes, misinformed the defendants as to the status of the tax books. The State sold the land for nonpayment of taxes through an ex parte proceeding. The defendants received no personal notice. The purchaser, a neighbor in the sense that he owned land adjoining the defendants, kept the fact that a sale had been had a secret until the two years provided for redemption had elapsed.

Under the facts proven in this case the trial court should have by its decree set aside the tax deed on the ground that the sale constituted a fraud upon these defendants. The following cases support this conclusion: Ellis v. Powell, 117 S. W. (2d) 225; Lindsay v. City of St. Louis, 345 Mo. 1141, 139 S. W. (2d) 906.

The judgment of the trial court must therefore be reversed with directions to that court to enter a decree for the defendants, cancelling and holding for naught the tax deed through which plaintiff claimed title; plaintiff to be paid the amount he has expended in the payment of taxes with interest to the date the tender was made to him; plaintiff to pay the cost of this case. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.