■ STEFAN LANG et al., Respondents, v. CITY OF NEW YORK, Appellant.— Order of the Supreme Court, Queens County, dated February 14, 1969, affirmed, without costs. No opinion. Munder, Acting P. J., Latham, Kleinfeld and Benjamin, JJ., concur; Martuscello, J., dissents and votes to reverse the order and grant summary judgment to appellant, with the following memorandum: In this action, respondents sought (1) injunctive relief restraining the City of New York from enforcing a tax lien on their real property in Queens County for the second half of the fiscal year 1964/1965 in the amount of $44.46 and (2) cancellation of the tax lien. The issue raised on this appeal is whether the city can be estopped from asserting that a real estate tax has not been paid as against the purchasers of the property affected by the tax, who have paid over the purchase money to the sellers in reliance upon a tax bill which was stamped by the City Collector, showing that the tax had been paid. On April 7, 1965, respondents acquired title to the realty. At the closing of title the sellers delivered to respondents a tax bill issued by the City Collector which indicated that in January, 1965 payment was made of the 1964/1965 full-year real estate tax against the subject premises. In alleged reliance thereon, respondents paid to the sellers the full consideration for the deed, including an adjustment for the balance of the tax for the fiscal year ending June, 1965, which the sellers had allegedly prepaid. Several months later, respondents were informed that payment of the second half of the tax had not been noted on the tax office records, when the mortgagee demanded that the tax be paid. The City Collector refused to cancel or show the tax as paid. as demanded by respondents, claiming that the receipt showing payment was issued in error through no fault on the city's part. The City of New York claimed that on January 26. 1965 someone appeared at the cash line of the City Collector's office with a certified check for an amount which totaled a full year's payment of the 1965 water charges and the 1964–65 sewer rent for the subject premises, which items appear on one bill, plus the amount of

$44.46 (and $1.01 penalty) which was due for the first half of 1964/1965 real estate tax. The tax item was on a separate bill. Inadvertently, according to the city, the cashier placed one bill on top of the other and, while correctly perforating the water and sewer bill, incorrectly perforated both halves of the real estate tax bill. Yet the tax bill clearly shows that the amount actually paid on January 26, 1965 was for the first half year only. The bill contained no entries of a payment greater than that corresponding to the first half year, or indicating that the payor received the discount to which he would have been entitled had he in fact prepaid the second-half tax. The cash book and folio numbers were put in the spaces provided for the first-half payment and the equivalent spaces for second-half payment were left blank. The city, in its opposing papers, noted that the first-half payment was entered in Cash Book 82, Folio 203, and the entry was shown in the Real Estate Tax Register as of February 28, 1965. The register was an official record and was available to the public for reference, according to the city, by the last week of March, 1965. The register showed that the 1964/1965 second-half real estate tax for the premises had not been paid. Respondents noted in their papers at Special Term that taxes in Queens County are now shown or posted for at least three months after payment. Consequently, respondents claim that, in the case at bar, tax office receipts may, and should, be relied upon. Both parties in this action moved for summary judgment. Special Term originally denied the motions, holding that a question of fact existed as to whether respondents at the closing properly relied on the perforated tax bill in light of the availability of the tax register and in light of the absence on the receipt of cash book and folio numbers in the spaces provided for the second-half payment. Thereafter the court on its own motion amended its opinion and held that respondents could rely on the perforated tax bill. Shortly thereafter, the court, upon reargument, granted summary judgment to respondents, on the basis of a reply affidavit and exhibits which the court did not recollect having seen earlier. The latter, according to Special Term, indicated that it was somewhat usual, if not invariable practice, to omit book and folio number references on a tax bill when it is marked " paid ". In my opinion, summary judgment should have been granted to appellant. This action was based on the theory of equitable estoppel. " An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury " (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285, 292; *Triple Cities Constr. Co.* v. *Maryland Cas. Co.*, 4 N Y 2d 443). However, in my opinion, the representation sued upon should not be the basis of an estoppel action when it derives from a mere mechanical mistake on a tax receipt. Even Special Term conceded that in all except one of the cases relied on by respondents a city collector did not issue the receipt mistakenly; rather, payment was made by the wrong person or by a check which was subsequently dishonored. In *Rankin* v. *City of New York* (145 App. Div. 838, affd. 204 N. Y. 684) an entry was made illegally by a clerk in the official records of the Water Department. Moreover, in all of the cases cited by respondents the representation was noted and entered on official records. The tax receipt in the case at bar was not, as a matter of law, such an official record. This fact was conceded by Special Term when it stated: " This court is asked to go a step further and estop the city from asserting the lien for taxes where, upon the closing, a perforated tax bill, mistakenly issued by the cashier, is presented and relied upon even though the official records show that the tax has not been paid." Moreover, the representation must be made to a person who was intended to act upon it (cf. *Ultramares Corp.* v. *Touche,*

255 N.Y. 170). The tax bill was a document evidencing payment, between the city and the owners of the property, the sellers herein. The sellers knew when they paid the first-half taxes in January, 1965 that the tax receipt indicating full payment was erroneous. Yet they deliberately misled respondents when they showed them the tax receipt. It is against the sellers that respondents should proceed. The tax receipt issued by the city was for the benefit of the sellers, who knew the amount of taxes they really paid. It was not intended to be conclusive official evidence of payment when shown to a stranger in a separate future commercial transaction. There was conflicting evidence at Special Term as to the time period that elapses from the time that taxes are paid until the time payment is entered in the official records and the entry is available to the public. Respondents claimed that the period of time involved is three to four months. Consequently, they contend they are not charged with failing to inspect the official records in early April, 1965, when the taxes were allegedly paid near the end of January, 1965. Yet the record indicates that payment for the first half of the real estate tax, made on January 26, 1965, was entered in Cash Book 82, Folio 203, and was shown in the Real Estate Tax Register as of February 28, 1965. The register is an official record and was available to the public for reference by the last week of March, 1965. Payment of the second half of the real estate tax would, if in fact made, have been similarly posted in the register and available for reference the last week of March. Nevertheless, the register showed that the 1964/ 1965 second half of the real estate tax for the premises was unpaid. Moreover, any problem caused by a delay in posting a tax payment in the tax register (as claimed by respondents) can be solved by the production of canceled checks at the closing, evidencing payment, or by the placing of an appropriate amount of money in escrow. There is another flaw in respondents' cause of action based on equitable estoppel. Reliance on a representation must be justifiable, both in the sense that the party seeking the equitable relief was justified in believing the representation and that he was justified in acting upon it. As heretofore noted, the tax bill clearly indicated that the amount of taxes actually paid on January 26, 1965 was $45.47. The tax bill clearly showed that the real estate tax bill for the full year was $88.92. Moreover, the cash book and folio numbers were put in the spaces provided for the first-half payment and the equivalent spaces for second-half payment were left blank. In my opinion, these factors precluded respondents as a matter of law from relying in any way on the tax bill. Respondents have failed completely to prove the elements of a cause of action based on equitable estoppel. Accordingly, I would reverse the order and grant summary judgment to appellant, the City of New York.