Joseph H. ROTTJAKOB and Yvonne S. Rottjakob, his wife, Respondents,

v.

George C. LEACHMAN, Collector of Revenue within and for the County of St. Louis in the State of Missouri, Appellant.

No. 58760.

Supreme Court of Missouri, En Banc.

April 14, 1975.

**398**

---

Robert C. Jones, Harold A. Tzinberg, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, for respondents.

Thomas W. Wehrle, St. Louis County Counselor, Don R. Williams, Asso. County Counselor, Clayton, for appellant.

MORGAN, Judge.

The sole issue in this case is whether real property bought by innocent purchasers is responsible for real estate taxes and amenable to a tax lien and order of sale when said purchasers relied in good faith on the county collector's records which reflected that such taxes had been paid when in fact they had not.

In May, 1966, respondents, Joseph H. Rottjakob and his wife (hereinafter referred to as plaintiffs), purchased certain real property in St. Louis County. Prior to the purchase, they requested the Chicago Title Insurance Company to examine the title thereto. When the company examined the collector's records, there was an entry showing that the taxes on the property for 1965 had been paid under the name of Village Square, Inc.—the owner of record prior to Fred Ahlemeier Company from which plaintiffs purchased the property. The money paid by Village Square, Inc. apparently was intended to satisfy the tax due on a lot near or adjacent to that purchased by plaintiffs. The error eventually was discovered on June 30, 1967, more than one year after the purchase. The records in the collector's office were changed and corrected to show that the taxes for 1965 were unpaid. On May 8, 1968, some ten months later, plaintiffs received a statement of delinquent taxes (dated May 7, 1968) which indicated that the 1965 taxes were overdue and owing. Some two years later, plaintiffs received a notice dated May 27, 1970, which stated that the "property *will be offered for sale on the Courthouse steps* in August of this year" because of the unpaid taxes.

Plaintiffs, thereafter, initiated the lawsuit with which we now are concerned. The trial court, after a hearing, ordered: (1) that the real estate taxes for 1965 in the amount of $65.58 (including penalty and interest) "be stricken from the record as a lien against said real estate," (2) that the collector "is estopped" from collecting the 1965 taxes and from pursuing any legal action against plaintiffs' property, and (3) that the collector will cause his records to be marked to show that plaintiffs are not delinquent on their 1965 taxes.

Defendant lodged an appeal in the Court of Appeals, St. Louis District, which, by a

2-to-1 opinion, would have reversed the trial court. Therein, the observation was made that: "The issue is novel and so far as we are able to determine is one of first impression in this state. Resolution of the issue involves the power of the County to collect taxes as an essential function of government for the benefit of all the people of the County and the right of innocent individual citizens who rely on the records of a county office not to be prejudiced by an innocent mistake made by the county in its real estate records * * * We are not referred to, nor has our research disclosed any authoritative decisions in Missouri. * * * When the issue presented has arisen in similar situations in other jurisdictions where an innocent mistake has been made and third persons are in some manner prejudiced, there is a clear division of authority. One line of authorities takes the position that the government cannot be estopped.[1] Another line of cases takes the opposite view.[2]" Other cases are of interest.[3]

An application to transfer was sustained by this court, and we consider the same "as on original appeal." Rule 83.09, V.A. M.R. Nevertheless, we do recognize, and consider helpful, the reasoning of the Court of Appeals. Two judges, following the out-state cases which have ruled that the burden should fall on the innocent purchasers, concluded, to-wit:

> We believe that the county collector under the circumstances of this case cannot be estopped from collecting and enforcing the real estate taxes against the property by reason of a mistake or "pure error" of an employee. Otherwise the public welfare would be "seriously menaced" or the public functions of the county may be "dangerously crippled." There is no provision in our statutes for the discharge or relinquishment of a lien other than by actual payment.

We are, of course, sympathetic to the plaintiffs' cause because they, too, were innocent and acted in good faith, but we believe that the public interest would be jeopardized by holding otherwise.

One judge, dissenting, followed the cases which protected the innocent purchasers, and submitted that:

> The tax records are public records and as such relied upon by the real estate industry and the title insurance companies in the conduct of their business. In reliance on these records and their integrity contracts for the sale and purchase of real estate are negotiated; certificates of insurance are issued insuring against defects in title. I believe that since these are public records required to be kept by law the Collector had the duty and the responsibility to maintain them correctly and upon his failure to satisfy this requirement those persons who rely on what the records reflect with respect to the tax status of a parcel of property to their detriment should not be left to seek

1. Some of the decisions supporting the rule that the government is not estopped: Philadelphia Mortgage & Trust Co. v. City of Omaha, 63 Neb. 280, 88 N.W. 523, 93 Am. St.Rep. 442 (1901); Philadelphia Mortgage & Trust Co. v. City of Omaha, 65 Neb. 93, 90 N.W. 1005, 57 L.R.A. 150 (1902); Kuhl v. Mayor of Jersey City, 23 N.J.Eq. 84 (1872).

2. Some decisions holding that the government may be estopped: Curnen v. The Mayor, 79 N.Y. 511 (1880); Rankin v. City of New York, 145 App.Div. 838, 130 N.Y.S. 427, affd. 204 N.Y. 684, 98 N.E. 1114 (1912); Weil v. City of New York, 179 App.Div. 80, 166 N.Y.S. 221 (1917); affd. 223 N.Y. 599, 119 N.E. 1085 (1918).

3. We add the following cases to those noted in 1 and 2. For the innocent purchaser: Jackson Park Hospital Co. v. Courtney, 364 Ill. 497, 4 N.E.2d 864 (1936); Lang v. City of New York, 58 Misc.2d 566, 296 N.Y.S.2d 241 (1968); aff'd 34 App.Div.2d 1014, 314 N.Y.S.2d 139 (1970); modified 28 N.Y.2d 601, 319 N.Y.S.2d 851, 268 N.E.2d 647 (1971); Seward v. Fisken, 122 Wash. 225, 210 P. 378, 27 A.L.R. 1208 (1922); In re Sale of Real Estate for Taxes, Lawrence County, 149 Pa.Super. 440, 27 A.2d 688 (1942). Contra: Lovett v. City Treasurer of Detroit, 286 Mich. 159, 281 N.W. 576 (1938); City of San Angelo v. Deutsch, 126 Tex. 532, 91 S.W.2d 308 (1936).

recourse at their expense against someone else.

After considering the cases cited herein, as well as those in the annotation captioned: "Effect of certificate, statement (or refusal thereof), or error by tax collector or other public officer regarding unpaid taxes or assessments against specific property," found in 21 ALR 2d 1273–1312, it becomes obvious that little could be gained by reviewing the many out-state cases because of the particular constitutional provisions, legislative enactments or decisional law peculiar to each jurisdiction. If such were not controlling, the result in each case turned necessarily on a philosophical approach to the problem.

Both sides suggest that there is no statutory provision in Missouri which clearly governs the situation; and, the task is to decide, admittedly somewhat as a policy matter, who should bear the burden of the error. It is not necessary to cite, generally, authority for the statement that the courts of this state always have made an effort to protect those innocent of any fault or neglect. However, we do mention a few cases, as examples, to show that the same approach has been taken in tax-related cases, from which perhaps an analogy can be drawn.

In Harness v. Cravens, 126 Mo. 233, 28 S.W. 971 (1894), the plaintiff sought the cancellation of a sheriff's deed executed after a judgment for taxes for 1886 was rendered against plaintiff's land with execution and sale thereon. The plaintiff, an elderly man, went to the county collector's office in March, 1889, and "called for all the taxes against the land," paid "all he fetched forward," was given a receipt and left. Six months later, suit was commenced against his property for taxes for 1886. Judgment was entered and the property was sold without the plaintiff ever knowing about the judicial proceedings; he lived in another county. Plaintiff was successful in having the sheriff's deed cancelled, and the following excerpts, l. c. 976, 977, 978, from the court's opinion are illuminating:

"Section 7679, Rev.St.1889 [now §§ 140.-050–.070, RSMo 1969], makes it the duty of the county clerk to place in a book to be called the 'back-tax book' a correct list, . . . of all tracts of land on which back taxes shall be due in such county, * * * No such duties as these were performed in the case at bar. * * * The object of the law seems to be very plain. It is to furnish a source of reliable information to the inquiring taxpayer, so that when he receives a statement from the collector that such an amount is due on a tract of land, or that none at all is due, he can rely with all confidence on such statement; and when he pays the amount said by the collector to be due, he can set his mind at rest, seek no further, and be under the protection of the law. If this is not the meaning of the statute, then it operates as a snare and pitfall for the unwary. In short, the calling on the collector for the amount due for the taxes on certain land and an offer to pay the same should be regarded as a tender, and if the amount demanded by the collector is paid, this should be regarded as a discharge of the tax lien. * * * In regard to ordinary tax liens, it has been ruled that if the proper officer, authorized to do so, give a statement or certificate that there are no back taxes due, the purchaser applying for it is protected, although the officer has erred. [Out-state cases which protected the innocent are cited and discussed.] * * * Others may say it, but I for one will never say that this old man is to be robbed of his land through the neglects and blunders of the state's chosen agents. Others are bound by the acts and blunders of their agents, and I know of neither rule nor reason which prevents the state from being likewise bound in similar circumstances."

Thereafter, the court did comment, at l. c. 978, that "the discharge of the lien would not remove the tax debt; that would still remain, and could be recovered." The court did not specify against whom the

collection could be made. If it is assumed that the court intended to mean the taxpayer, little guidance is obtained because § 140.640 now provides, in part, that: "Nothing in this chapter contained shall be construed to authorize a personal judgment against any owner of any land . . . for any real estate tax . . ." State ex rel. Leachman v. Matoushek, 471 S.W.2d 686 (Mo.App.1971). Furthermore, two of the judges concurred primarily because of procedural defects in the tax sale proceedings; and, in Hampton v. McClanahan, 143 Mo. 501, 45 S.W. 297 (1898) and Mangold v. Bacon, 229 Mo. 459, 130 S.W. 23 (banc 1910), some of the members of the court were critical of such broad and sweeping language.

City of Aurora ex rel. Williams v. Lindsay, 146 Mo. 509, 48 S.W. 642 (1898), was another case where the collector misinformed a taxpayer. At l. c. 645, the court said: " . . . when Williams [the collector] examined his books when Mathews paid the taxes for 1892 and 1893, and told him there was no suit for taxes pending against this lot, and accepted the taxes, it extinguished the claim, and discharged the lien, whether Williams made a mistake or not, and the judgment thereafter rendered against the land for those taxes was void. And when Williams told Mathews, on November 17, 1894, after examining the tax book, that there was no suit pending for the taxes for 1891, and accepted the taxes, it extinguished the tax lien, notwithstanding the tax lien had become merged in the judgment lien. Section 7606, Rev.St.1889, makes it the duty of the collector to furnish a statement of the amount of taxes against any tract of land to any person applying for it. Mathews therefore had a right to 'set his mind at rest, seek no further, and be under the protection of the law.' " (Citing Harness v. Cravens, supra.)

A more recent expression of this court is found in Campbell v. Daub, 349 Mo. 153, 159 S.W.2d 683 (1942), wherein the holder of a tax deed sought possession against owners who had failed to pay taxes due on said real estate. The following therefrom is sufficient (l. c. 684–685):

" . . . these parties went to the collector's office to see if there were any taxes due on the property here in question. They were told that all taxes had been paid, or that no taxes appeared to be unpaid. . . . The officials, whose duty it was to collect the taxes, misinformed the defendants as to the status of the tax books. The state sold the land for non-payment of taxes through an ex parte proceeding. The defendants received no personal notice. * * * The trial court should have by its decree set aside the tax deed on the ground that the sale constituted a fraud upon these defendants."

The three cases from which the quotes herein have been taken are only a part of the untold number of prior cases in this state involving tax matters. Because of the disparity in factual situations, and the fact the taxes were actually paid by someone, they do not, nor is it suggested that they do, govern the instant case. However, they do reflect that a collector's errors should not operate to the prejudice of innocent parties; and, moreover, that a potential taxpayer should be entitled to rely on representations of a tax collector as they have been made to appear on the official records prepared for the use and benefit of all. Stripped of their individual facts, such cases confirm that "fairness" should be an ever present objective in the administration of justice. Can such a worthy objective be attained in this case?

Section 137.085(2), RSMo 1969, V.A.M. S., provides: "Real property shall in all cases be liable for the taxes thereon, and a lien is hereby vested in favor of the state on all real property for all taxes thereon, which lien shall accrue and become a fixed encumbrance as soon as the amount of the taxes is determined by assessment and levy, and said lien shall be enforced as provided by law; said lien shall continue

to be enforced until all taxes, forfeitures, back taxes and costs shall be fully paid *or* the land sold *or* released as provided by law." (Emphasis added.)

The lien created by the statute can be removed as an encumbrance on real estate by any one of three possibilities (listed in the statute in the disjunctive), to-wit: (1) full payment of taxes due, (2) sale and recovery of the proceeds, and (3) "released as provided by law." How can a stranger to the title or ownership of the property, an innocent potential buyer, determine that the lien created by the statute has been removed? For purposes of this case, it is sufficient to refer only to Section 139.-090(1), RSMo 1969, V.A.M.S., which directs that the ". . . collector shall enter 'paid' against each tract or lot of land when he collects the tax thereon." The public record thus made undoubtedly would fall within the scope of the third possibility; and, in turn, such an entry would constitute a release of the lien as to innocent parties if public tax records are to have any validity whatever. If title companies, abstractors, attorneys and prospective purchasers of realty cannot rely on the collector's public records, maintenance of which is required by law, then a measure of uncertainty necessarily will attend every transfer of realty in this state. Such a result would not seem to further the public interest.

It should be apparent otherwise, but we do emphasize that this case does not involve, nor is the conclusion reached herein applicable to, the realty of an owner or others who knew or should have known whether or not taxes, in fact, had been paid on the particular property. The case only involves those who of necessity must rely on the public records. Since this is a case of first impression, after one hundred fifty-four years of statehood, one truth becomes self-evident, i. e., the number of times an error will appear on the specific and particular record upon which a stranger to the situation must rely will be minimal.

No loss to the taxing authority is involved nor need it occur. As provided in Section 52.020, RSMo 1969, V.A.M.S., the collector must provide a bond with proper sureties, which is paid for from public funds, that he will account for all sums due. This opinion need not be extended by considering the collector's settlement and his liabilities relating thereto. Those interested may see Huber v. Pickler, 94 Mo. 382, 7 S.W. 427 (1888); Holt v. Rea, 330 Mo. 1237, 52 S.W.2d 877 (1932); State v. Sanderson, 77 S.W.2d 94 (Mo.1934); and, State v. Ludwig, 322 S.W.2d 841 (Mo. banc 1959).

We find no legal obstacle prohibiting the result which fairness dictates, and conclude that any result flowing from the error made should fall on the party making it.

The judgment is affirmed.

DONNELLY, C. J., and SEILER, BARDGETT and FINCH, JJ., concur.

HOLMAN, J., dissents in separate dissenting opinion filed.

HENLEY, J., dissents and concurs in separate dissenting opinion of HOLMAN, J.

HOLMAN, Judge (dissenting).

I dissent. I agree with the views expressed in the following excerpt from the principal opinion of the court of appeals: " . . . [T]he assessment and collection of real estate taxes is a governmental function, is necessary to governmental existence and the collection is beneficial to all the people of St. Louis County. The collector is under a duty to collect and enforce unpaid general real estate taxes which have not actually been paid. Our statute, § 137.085 provides that a lien for all taxes on property shall be enforced until 'fully paid.' We believe that the county collector under the circumstances of this case cannot be estopped from collecting and enforcing the real estate taxes against the property by reason of a mistake or

'pure error' of an employee. Otherwise the public welfare would be 'seriously menaced' or the public functions of the county may be 'dangerously crippled.' There is no provision in our statutes for the discharge or relinquishment of a lien other than by actual payment."

I also approve of the following statement: "The collection of duly levied taxes for governmental purposes is a governmental function and the collection officer cannot, by mistake or misinformation, work an estoppel, enforceable in a court of equity. The fact, and not the misinformation, controls. The treasurer was serving in a governmental capacity and the right of the municipality in the particular at bar is not to be measured by his mistake of fact. No matter how innocently done the treasurer could not, because of lack of authority, by any representation, make unenforceable a duly levied tax .in his official hands for collection." Lovett v. City Treasurer of Detroit, 286 Mich. 159, 281 N.W. 576, 577 (1938).

In accord with the foregoing principles I would reverse the judgment of the trial court.