Treva A. BREWEN, Carol Renee Brewen, Ronnie Mark Brewen and James Mark Brewen, Respondents,

v.

George C. LEACHMAN, Collector of Revenue, Elbert Ewing, Bernard Feinstein and Beatrice M. Feinstein, Appellants.

Nos. 44468, 44469.

Missouri Court of Appeals, Eastern District, Division One.

Aug. 9, 1983.

Motion For Rehearing/Transfer to Supreme Court Denied Sept. 15, 1983.

William C. Barnett, Thomas W. Wehrle, County Counselors, Don Williams, Assoc. Counselor, Clayton, for appellants.

William R. Hirsch, Clayton, for respondents.

STEPHAN, Judge.

Defendants appeal a judgment rendering invalid a land tax sale for nonpayment of real property taxes. We affirm.

Plaintiff, Treva Brewen, bought the property at issue with her husband, Rolla Brewen, in 1954. Mr. Brewen died in 1973. The property is located at what is now 18626 Olive Street Road in Chesterfield, St. Louis County. The 1954 deed in the names of Treva and Rolla Brewen described the property as being comprised of two contiguous parcels, one 1.42 acres and another 1

acre in size. The deed of trust on the property was held by First National Bank until 1974. Until that time, the Bank received and paid out of an escrow account all the real property taxes on the property. The Bank each year received three separate real property tax bills for the Brewen property since, for some reason, the Assessor's office had divided the Brewen land into three taxable portions and assigned different locator numbers to each. In 1974 the deed of trust was repaid, and the Bank asked the Collector that tax bills no longer be sent to it. It was at this point that an error was made by the Collector's office. The Collector's office noted an address for only the one acre portion of the property on which the Brewen house was located. The other two portions were categorized by the Collector's office as non-mailable and were entered into the data processing system as such. Thereafter, no bills were mailed for those parcels.

For the years 1975–79, Mrs. Brewen received a single real property tax bill. She believed that the single bill was for her entire property, and each year she paid the bill. Notices of sale for nonpayment of real property taxes were first published in the *St. Louis Countian,* a newspaper of general circulation, in 1978 for delinquent taxes for the years 1975, 1976, and 1977. There were no bidders at this sale nor at the 1979 sale which added 1978 as a delinquent year. The 1978 and 1979 notices both listed the property as two parcels and named Treva Brewen and Rolla Brewen as owners.

On November 14, 1979 Treva Brewen quitclaimed the entire property to her children, Carol, Ronnie, and James Brewen, plaintiffs herein, reserving a life estate in herself. This deed bore the address of the property and was recorded.

In July 1980 the notices for the third and final sale were published in the *St. Louis Countian.* The notices named only Treva Brewen and still described two parcels composed of 1 and .42 acres for which a total of $290.24 and $100.54 respectively in real property taxes for 1975–79 were due.

In August 1980 defendant Bernard Feinstein purchased the property at the foreclosure sale for a total price of $4,970. At Feinstein's direction, two Collector's deeds were executed in the name of Elbert Ewing. At trial, Feinstein testified that Elbert Ewing was his "nominee." Mr. Feinstein, who described himself as "a real estate dealer," explained that, with respect to subsequent sales, "it is so much easier as far as the sale to, to represent someone else. You have more leeway in negotiation . . . ." The parties stipulated at trial that Feinstein, not Elbert Ewing, was the "actual owner" of the property. In September 1980 an unrecorded quitclaim deed conveyed the property from Elbert Ewing to Bernard Feinstein and his wife Beatrice Feinstein.

When Mrs. Brewen discovered in September that her property had been sold for taxes she brought this action, joined by her children, to set aside the foreclosure sale as invalid and she tendered the total bid price to the court. The trial court entered judgment for the plaintiffs holding that the sale was invalid and the Collector's deeds and any subsequent conveyances were void.

■ Defendants' first allegation of error attacks the trial court's ruling that the 1980 notices of sale were insufficient since they failed to include the names of the Brewen children who were record owners by virtue of the 1979 quitclaim deed from Mrs. Brewen. At the outset we note that we give deference to the trial court's finding that the names and address on this deed were available or should have been available to the Collector's office in time for the 1979 tax records. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976).

The applicable statute is Section 140.150–2, RSMo 1978, which provides in part: "No real property shall be sold for state, county or city taxes without judicial proceedings, unless the notice of sale contains the names of all record owners thereof, or the names of all owners appearing on the land tax book and all other information required by law."

Defendants make much of the fact that Treva Brewen alone was listed on the "land

tax book." However, defendants overlook the fact that the land tax book contemplated in 1945 when this language was added to the statute was not the "land tax book" used in the Collector's office in 1979. Ninety-nine percent of the Collector's records at that time were computerized. The computer purportedly keeps a continuous record of the transactions of the office; and the permanent record, the "land tax book," is merely a summary printed by the computer at the end of the Collector's fiscal year in February. Given the technology in use in 1979, the failure of the July 1980 notices of sale to include the names of the Brewen children is, at the very least, a serious irregularity. Had Mrs. Brewen's deed found its way into the tax book, as the trial court held it should have, the chances of her learning of the sale would have been increased since the notice would have included the names of her children and a description of the land with its proper address.

We do not rely on this fact alone to affirm the trial court, however. The minimum requirements of § 140.150–2, supra, were met: Mrs. Brewen's name was the only name on the land tax book, and it was included in the notices.

■ Rather, viewing the matter as did the court of equity below, we agree that the facts of this case give rise to an estoppel in pais by reason of the Collector's practice of sending to Mrs. Brewen one bill for real estate tax. In spite of the fact that such bill represented the taxes due on only a portion of her real property, Mrs. Brewen relied upon it as an assertion by the Collector of all tax due upon all of her real estate. In so holding, we are fully cognizant of the opinion of this Court in the case of Elbert Ewing v. Lockhart, 641 S.W.2d 835 (Mo. App.1982), the facts of which bear surface similarity to those of the instant case. In Lockhart, as here, Mr. Ewing obtained a Collector's deed to a parcel of real estate at a sale occasioned by tax delinquency. Ewing initiated a suit to quiet title, and Lockhart counterclaimed for equitable relief to set aside the deed. The trial court quieted title in favor of Ewing and denied relief on the counterclaim. This Court affirmed.

On appeal, Lockhart claimed error based on the fact that after purchasing two contiguous, but separately assessed, parcels of property in 1972 and paying taxes on them, he thereafter received one tax bill from the Collector in each subsequent year and paid it, believing that the two parcels had been combined. In fact, they had not been combined. The annual bills for one parcel were sent to Lockhart at his correct address, and he paid them. The bills for the parcel later sold for the delinquency were sent to an incorrect address and were neither received nor paid. Noting that "[i]t is unfortunate for former owner [Lockhart] that he must lose this appeal," this Court held that the St. Louis County Collector is not required by law to mail any tax bills to resident taxpayers, and that the failure of a taxpayer to receive a bill does not relieve him of the obligation to pay the taxes. This ruling was based solely upon interpretation of applicable statutes. The doctrine of estoppel was not presented to this Court in Ewing; and, indeed, it was not as accessible to the taxpayer there as here. The taxpayer in Ewing had acquired the parcels at different times and was aware that they were assessed and billed separately. His assumption that the Collector had thereafter consolidated the bills was not as justified as Mrs. Brewen's innocent belief that the Collector's office had not separated the bills by categorizing one as mailable and two as not mailable. Accordingly, we cannot say that in applying the doctrine of estoppel here, the trial court erroneously applied the law. Murphy v. Carron, supra, 32.

In a case which is analogous to the one at bar, Rottjakob v. Leachman, 521 S.W.2d 397, 400 (Mo. banc 1975), our Supreme Court said that, in a case of this nature, it is appropriate to consider, "who should bear the burden of the error. ... [T]he courts of this state always have made an effort to protect those innocent of any fault or neglect." In that case, prospective purchasers of real estate employed a title company to investigate the title. That investigation revealed a record entry that the prior year's

taxes had been paid; and the purchase was consummated in reliance on such fact. The entry was erroneous, however, and was later changed by the Collector's office. The purchasers were so notified; and, when they failed to pay the taxes, the Collector notified them that the property would be sold. The purchasers filed suit resulting in an order from the trial court voiding the tax lien against the property, holding the Collector "estopped" from collecting the taxes in question, and requiring the Collector to change his records so as to show that the taxes were not delinquent. An appeal to this Court resulted in a two-to-one opinion which would have reversed the trial court. The Supreme Court sustained an application to transfer and, with an opinion we find instructive here, affirmed the trial court's judgment.

Although the misinformation involved in *Rottjakob* was a record entry observed by the purchasers' agent, the three cases discussed at length in the opinion involved situations in which the taxpayer visited the Collector's office and was given incorrect information which he relied upon to his detriment. For example, in the first of these cases, *Harness v. Cravens,* 126 Mo. 233, 28 S.W. 971 (1894), the taxpayer paid all the taxes that he was told were due. Six months later, unbeknown to the taxpayer, a judgment was rendered for taxes he was not told about and his property was sold in satisfaction of the judgment. The taxpayer was successful in having the deed set aside. After quoting at length from the cases, the Court said in *Rottjakob,* supra, 401, "Stripped of their individual facts, such cases confirm that 'fairness' should be an ever present objective in the administration of justice. Can such a worthy objective be attained in this case?" The Court then answered its own question affirmatively and in favor of the purchasers.

We think there is room for such fairness here. Plaintiff, whose husband had handled all such matters as the payment of taxes for the family until his death, reasonably relied on the belief that the bill from the Collector was for her taxes, *all* her taxes. Few, if any, persons of ordinary intelligence would do anything else. Indeed, chaos would result if each recipient of the 350,000 real estate tax bills mailed by the St. Louis County Collector's office decided to check with the forty-four employees of that office to ascertain that the bill represented all of the tax owed. We see no difference between the receipt by a taxpayer of a bill for taxes and an oral statement by the Collector that no more taxes are owed where, as here, the taxpayer has no reason to suspect anything else.

The separation of plaintiff's real estate into three distinct parcels by officials of St. Louis County government was beyond plaintiff's control, knowledge, or reasonable suspicion. The coding of two of the parcels for computer purposes as "non-mailable" in spite of the sequential numbering with the "mailable" parcel was a blunder that could not be explained by representatives of the Collector's office. A portion of the opinion in *Harness v. Cravens,* supra, which was quoted in *Rottjakob,* supra, 400, is particularly apposite here: "I for one will never say that this old man is to be robbed of his land through the neglects and blunders of the state's chosen agents. Others are bound by the acts and blunders of their agents, and I know of neither rule nor reason which prevents the state from being likewise bound in similar circumstances." So it should be here.

■ Finally, we should note the reasons often cited for the strict application of the tax laws, e.g. the importance of collecting public moneys to support governmental functions, are not present here. Plaintiff has paid into the registry of the Circuit Court an amount equivalent to the amount paid by Feinstein to the Collector at the 1980 tax sale and the judgment provides for reimbursement of the defendants, payment of the back taxes, and court costs. Under the terms of the judgment, the taxes will be paid and the defendants treated fairly.

The judgment is affirmed.

STEWART, P.J., concurs.

CRANDALL, J., dissents in separate opinion.

CRANDALL, Judge, dissenting.

I respectfully dissent. Respondents had the legal duty to inquire about and pay the taxes due without any notice. *Ewing v. Lockhart,* 641 S.W.2d 835 (Mo.App.1982). They are, therefore, not entitled to equitable relief. *Id.*